HATCH v. HEIM.

(Circuit Court of Appeals, Seventh Circuit.   April 16, 1898.)

No. 471.

1. BAILMENT—CONTRACT FOR CONTROL OF FARM.
    The owner of a farm, on which he then lived and has since lived, agreed with his son that the son should take control and management of the farm, implements, and stock, make repairs, pay taxes, replace stock, and have the net proceeds, each party being free to terminate the agreement at any time. This arrangement continued, with an interval of a few months, for six years. *Held*, that the transaction was a bailment, which did not vest the title of any of the property, or of the proceeds of the farm, in the son, so as to subject it to an execution for his debts.

2. TITLE—POSSESSION—ILLINOIS.
    The possession of five years which, under 2 Starr & C. Ann. St. Ill. 1896, p. 2020, § 7, establishes title, is an exclusive and undivided possession, and does not apply to a case where the possession, amounting only to custody, is held for the benefit of the owner, under circumstances which could not be promotive of fraud.

In Error to the District Court of the United States for the Northern Division of the Northern District of Illinois.

Geo. A. Dupuy, for plaintiff in error.

K. M. Landis, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge.   The plaintiff in error, Lewis Hatch, filed in the court below his petition, entitled "Joseph G. Heim, Receiver, &c., v. Frank W. Hatch," averring in substance that he was the sole and absolute owner of certain personal property, consisting of live stock, farming implements, and farm products; that on Saturday, August 21, 1897, the property described was levied upon by virtue of an execution dated August 13, 1897, and issued out of that court, "to enforce the collection of a judgment for four thousand dollars debt and three hundred fifty-one and nine-hundredths dollars damages and costs, entered on July 20, A. D. 1897, in favor of said above-named plaintiff, and against the above-named defendant, Frank W. Hatch, in the above-entitled proceeding"; and that the property had been wrongfully levied upon and taken from his possession.   It does not appear in the record, but was assumed at the hearing and in the briefs, that Heim was receiver of a national bank, and that for that reason the case was one of which the district court had jurisdiction.   No answer or plea to the petition was filed, but a jury was impaneled and sworn to try "the issue joined," and, after hearing the evidence and the charge of the court, returned a verdict finding the issue for the receiver, and that the property levied upon was the property of Frank W. Hatch when the levy was made.   Various errors are insisted upon.   Those predicated upon the rulings of the court in admitting and excluding evidence do not seem to merit special consideration.   If material error was committed, it is to be found in the court's charge to the jury.

The essential facts of the case are that, in 1883, Lewis Hatch, being the owner of a large and well-stocked farm, on which he then had and

has ever since maintained his home, entered into an agreement with his son, Frank W., then just out of school, whereby the latter was to take the control and management of the farm and of the implements of husbandry and the live stock thereon, maintain repairs, pay taxes, replace stock disposed of, and have as his own the net proceeds; each party being at liberty to terminate the arrangement at any time. The testimony of the father and son to that effect is harmonious, and was not materially affected, so far as we perceive, by other testimony, or by the proof of other facts, such as their returns of property for taxation, and the disposition made by them of wool which had not been levied upon. The court in its charge stated the arrangement as follows:

"Mr. Lewis Hatch was then approaching his seventieth year, according to the testimony, and desired to retire from active work. He says to his son: 'Now, here is the farm [in effect; I am not attempting to quote the language, but in effect]. Now, here is this farm of 700 acres, and here is all of this stock, farming implements, and property on the farm. I want you to take it. I want you to do well by it. You shall receive all of the income or revenue which is derived out of it,—in other words, all the benefits which accrue from the use of the farming property: subject, however, to the payment of all taxes, to the keeping up of repairs, and the property itself, both farm and personal property, shall be kept up, so that at the termination, whenever that shall be, there shall be left here as much of personal property, stock, etc., as I turn over to you.'"

The farm was conducted under this arrangement, the son living with the father, until 1886 or 1887, when, having married, Frank removed to Texas, but after some months returned, at the request of his father, and resumed control, upon the same terms and conditions as before, except that he lived in a separate house built on the farm for his use. In November, 1892, he went away again, going to the state of Washington, where he incurred the liability for which the judgment was taken, for the satisfaction of which the property in question was seized on execution; but whether in that instance there was a complete and intended abandonment of the farm and property thereon, as when he went to Texas, is not clear, but, in the view we take of the case, the question is not important. The natural and reasonable construction of the arrangement, in our judgment, is a bailment, which did not vest the title of any of the property, or of the proceeds of the farm, in Frank Hatch, though, while the arrangement lasted, he had power to sell to others without further authority from his father. Certainly the jury would have been justified in so finding, if, indeed, the court ought not to have so instructed. And, this being the arrangement, it was not necessary that Lewis Hatch, in order to protect his rights in the property, should assert dominion, or in any way interfere with Frank's visible possession and control. The relation between them was not that of landlord and tenant, but was more like that of master and servant. The father, desiring his farm cared for and kept up, and at the same time wishing to afford an opportunity to his son, employed him to take the control and management, as stated; and the possession given the son, being necessary to the performance of the service contemplated and determinable at any time at the will of either party, was not a tenancy, but the possession of a servant. See cases cited in Chatard v. O'Donovan, 80 Ind. 20. The son's possession of the farm, and also of the products thereof and of other property, was the posses-

sion of the father. The same is true, also, of property, implements, or live stock bought and brought on the place, in pursuance of the agreement, as a part of the farm equipment. .

It follows that the proposition (for which Story, Bailm. § 439, and Lonergan v. Stewart, 55 Ill. 49, are cited) that when one man turns over personal property to another, under an arrangement by which the latter is not obliged to return the specific articles, but may deliver other property of like kind and value, the receiver becomes the owner of the property delivered to him, is not applicable, and the court erred when, after stating the arrangement, it proceeded to say to the jury:

"Now, then, that is their story of the arrangement. In that there is no word of suggestion by Lewis Hatch that he reserves a control as to how he was to conduct it [the farm], as to whom he would sell this or that produce from the farm, or this or that piece of stock; no suggestion of that is in the agreement as stated. Look over the conduct of the parties subsequently, and see if you can find from that any such understanding."

This is objectionable, because it implies what was afterwards distinctly affirmed in the charge, that, if Lewis Hatch did not "retain the absolute dominion and control over all that property," "the effect of the arrangement was to put the title of the property in F. W. Hatch." This error was emphasized by other equivalent expressions in the charge, and especially by the statement that:

"No man has the right to put into the absolute control and possession of another personal property for a long period of time (in the state of Illinois for the period of five years or more) without taking the consequences which accrue therefrom, namely, that the title must be presumed to be in the person to whom it was given over, if the control is an absolute control. * * * It requires a clear showing of a paramount control in Lewis Hatch; that is, a right to say what shall be done with reference to all this personal property or any of it. Unless that was retained by him, the title passed."

The possession for five years which, under the Illinois statute (2 Starr & C. Ann. St. 1896, p. 2020, § 7), establishes title, is an exclusive and undivided possession, and does not apply, and evidently was not intended to apply, to a case like this, where the possession, amounting only to custody, is held for the benefit of the owner, under circumstances which in no way suggest or could be promotive of fraud. The right of any one circumstanced as was Mr. Hatch to make such an arrangement with a son or with any other whom he should choose is an important right, inconsistent with no principle of public policy, and forbidden by no precept of the law; and if, instead of remaining upon the farm and exercising some measure of control, he had gone away, his right upon returning to assert title to the unsold property remaining upon the farm, whether the increase or bought to supply the place of that which was there when he put his son in control, would not be less clear.

The charge of the court seems also to be subject to the objection urged that the jury was not told that in respect to matters of fact the suggestions of the court were advisory only, and that the jury must finally exercise an independent judgment.

The judgment below is reversed, with instructions to grant a new trial.