## JAMES B. BALDWIN v. E. A. SKEELS.

*Landlord and Tenant.    Gen. Sts. c. 46, ss. 25, 27.    Evidence.*

In an action on ss. 22, 23, c. 46, Gen. Sts. by a lessee of the premises in question, to recover possession thereof of one who went into possession under a prior lease from plaintiff's lessor, and held over into plaintiff's term after the expiration of his own, together with damages for their detention, plaintiff, having testified in regard to the nature and extent of his business and its profits as bearing on the question of the value to him of the use of the premises, and after having testified on cross-examination that he usually made an inventory of his stock in October of each year, and that in October, 1874, his stock "was over $5,000,"—was asked what the amount of his stock was in October, 1875, on the 19th of which month defendant went out of possession, and whether he was not a bankrupt, and had not been endeavoring to settle with his creditors for a small percentage of his indebtedness. Those questions were objected to and the answers thereto excluded. *Held*, that the questions were not relevant to an issue upon the rental value of the premises, and not admissible.

The rent reserved in defendant's lease was $37.50 per month. The rent reserved in plaintiff's was $40 per month. Plaintiff, after testifying in regard to the nature and extent of his business, testified that the premises "were worth $100 a month to him," and, on cross-examination, that he based his estimate "on what his profits would have been if he had been permitted to occupy." The County Court, by which the case was tried, rendered judgment for the plaintiff for a sum computed at the rate of $60 per month for the time during which defendant retained possession after the expiration of his lease. *Held*, that the plaintiff was not restricted by ss. 25, 27, to a recovery computed at the rate of the rent reserved in defendant's lease, but might recover a fair and reasonable compensation for the use of the premises during the time of their detention; and that as the evidence relating to what plaintiff would have realized from the use of the premises was in some degree relevant upon the question of rental value, it was not error for the court to consider it in determining the question as to that value.

THIS was an action brought on May 4, 1875, before a justice of the peace, on ss. 22, 23, c. 46, Gen. Sts., to recover possession of certain premises in St. Albans, and appealed to the Franklin County Court. Trial by the court, April Term, 1876, ROYCE, J., presiding.

It appeared that at some time previous to April 1, 1875, the plaintiff took from one Gyles Merrill a written lease of the premises in question for the term of one year to begin with the day named, at the rate of $40 per month. The premises were then occupied by the defendant under a written lease from Merrill for

16

the term of one year beginning with April 1, 1874, at the rate of $37.50 per month. A short time before the expiration of the defendant's lease the defendant was notified of the lease to the plaintiff, and when his lease expired the plaintiff duly demanded possession of him, but he refused to surrender, and continued in possession until October 19, 1875, when he surrendered to one E. C. Gallar, to whom Merrill had on August 26, 1875, conveyed the premises by deed of warranty, duly acknowledged and recorded.

The plaintiff offered in evidence his lease from Merrill, to show that he had the right to the premises, and was entitled to bring the action in his own name, to which the defendant objected, but it was admitted, to which the defendant excepted.

The plaintiff testified that he was a dealer in fancy groceries, fruits and vegetables, that he desired to extend his business by opening another store, and leased the premises in question for that purpose, intending to put half of his stock there, that his sales would average $100 a day in the summer, and $75 a day in the winter season, and that the premises were $100 a month to him. On cross-examination he testified that he based that estimate on what his profits would have been. That testimony, and the testimony as to the rent paid by the defendant and agreed to be paid by the plaintiff, was the only evidence as to the value of the premises to the plaintiff.

On cross-examination the plaintiff testified that he took an inventory of his stock yearly in October, and that his stock in October, 1874, was over $5,000. The defendant's counsel asked the plaintiff what the amount of his stock was in October, 1875, to which the plaintiff objected, and the objection was sustained, to which the defendant excepted.

In the same connection the defendant claimed that the plaintiff was a bankrupt and had been endeavoring to settle with his creditors for fifteen or twenty cents on the dollar, to which the plaintiff objected. The objection was sustained, and the defendant excepted.

At the April Term, 1877, the court rendered judgment for the plaintiff for the sum of $427.36, the same being at the rate of $60 for each month that the defendant occupied the premises after

April 1, 1875, with interest to the time of the rendition of judgment; to which the defendant excepted.

*Farrington & Post*, for the defendant.

The court erred in finding the value of the premises at $60 per month. The only evidence tending to show the value was the testimony of the plaintiff and the defendant as to what they were respectively to pay. *Congregational Society* v. *Walker*, 18 Vt. 600. It is not to be presumed that the court based its finding on the testimony of the plaintiff that the premises were worth to him $100 per month, as that estimate was based on what he claimed his profits would have been. *Giles* v. *O'Toole*, 4 Barb. 261; 2 Greenl. Ev. 256; *Chicago* v. *Hunnerbein*, 4 Law & Eq. 655; *Weston* v. *Haley*, 27 Vt. 283.

But if the court was justified in weighing that testimony and finding any fact therefrom, then the testimony of the amount of stock the plaintiff carried and of his bankruptcy which was excluded should have been received, as it was material upon the question of the plaintiff's condition or ability to realize any profits. *Bank of Middlebury* v. *Rutland*, 33 Vt. 414; *Hard* v. *Brown*, 18 Vt. 87; *Richardson* v. *Hitchcock*, 28 Vt. 757; *Sherman* v. *Blodgett*, 28 Vt. 149.

—————————, for the plaintiff.

The opinion of the court was delivered by

Ross, J. The defendant's exceptions to the refusal of the court to allow him to inquire of the plaintiff on cross-examination in regard to the invoice value of his stock of goods in October, 1875, and whether at the time of the trial he was not bankrupt, and attempting to settle with his creditors at a percentage, are not well taken. If the plaintiff's financial condition, or the value of his stock of goods, could have any relevancy to the rental value of the premises, which is not apparent, it must be while the defendant was in the occupancy of the premises, and not subsequently thereto. The profits which the plaintiff would have realized in his business, if he could have had the use of the premi-

ses, do not furnish a full and accurate criterion by which to judge of the rental value of the premises, nor does what their use would have been worth to the plaintiff, based upon such profits. Nevertheless, the pecuniary advantage which one could derive from their use has a remote bearing upon what one could and would be likely to pay for the use of the premises, and so upon the rent which the premises would command in the market. This testimony was before the court unexcepted to, and could for that reason be considered in determining the rental value of the premises. If it was allowed to influence that determination, it was not legal error. Although the rent paid by the plaintiff and by the defendant, and this testimony of what the use of the premises would have been worth to the plaintiff if he had been allowed to have enjoyed them, was all the direct testimony introduced on the rental value of the premises, the court was not bound to be solely guided and controlled by it. The court was also to use its own judgment of its rental value, from its location and what it consisted of, as well as to weigh this testimony. There was evidence tending to show that the rental value of the premises was worth $60 per month for the time the defendant used them after his lease terminated. The County Court was to judge of the weight to be given this testimony in determining the rental value of the premises. Although this court, from the evidence detailed in the exceptions, might not have found the use of the premises worth $60 per month, the County Court having so found from testimony, received without exception, tending to establish such finding, it was not legal error, and is not subject to be revised by this court.

But the defendant further contends that, under the provisions of the statute allowing this action, the plaintiff is confined in his recovery to the rent per month stipulated for in the lease which terminated when the holding over commenced, and which was $87.50 per month. The plaintiff was paying $40 per month for the time the defendant held over after the termination of his lease. The defendant claims " rents " in s. 25, and " the rent " in s. 27, c. 46, Gen. Sts. mean the rent agreed upon and existing between the parties under the lease under which he held the premises immediately prior to the commencement of his holding the premises

against the right of the plaintiff.  Rent is the return, whether of money, service, or specific property, which the tenant makes to the landlord as compensation for the use of the premises.    It is not necessary it should be an agreed sum.   Wherever the relation of landlord and tenant exists, and there is no sum agreed upon as rent, the law implies an agreement to pay such a sum as will reasonably compensate the landlord for the use of the premises.   All the provisions of the statute creating and allowing this kind of an action to be brought before a justice of the peace, proceed upon the supposition that the defendant went into the use of the premises as tenant, and hence, though holding over, is precluded from questioning the title of the plaintiff, and that the lease itself is at an end between them.    By s. 22 it is only when the lessee shall hold possession of the demised premises without right after the determination of the lease by its own limitation, or after a breach of a stipulation contained in the lease of such a character as works a forfeiture of the lease, that the person entitled to the possession of the premises can resort to this remedy. The form of the declaration, " that the defendant is in the possession of the lands and tenements (describing them) which he holds unlawfully and against the right of the plaintiff," prescribed by s. 23, is to the same effect.    Both these sections presuppose that the lease is at an end between the parties.   If the plaintiff's only ground of action is the fact that the lease which once existed between him or his grantor and the defendant is at an end, it would seem to be forced and unnatural to hold that, because the statute gives him the right to recover " rents " or " the rent," as well as the possession of the premises, the Legislature meant to bring the lease—dead and ended, for the purpose of maintaining the action—back into life between the parties, and limit thereby the plaintiff's right of recovery to the rent therein stipulated, when the natural meaning of the word rent is the return by way of compensation which the tenant makes to the landlord for the use of the premises.   If the Legislature by " rents " or " the rent," meant the rent stipulated in the lease, it would have been very easy to have so worded the statute as to have unmistakably expressed that idea.   By section 25, the plaintiff's right of

recovery of "rents" before the justice is limited to thirty dollars. This might or might not allow him to recover the rent stipulated in the lease. In the case at bar, if the defendant had allowed the recovery before the justice to stand, the plaintiff would not have received the rent provided for in the lease by about $20. Hence rents in this section, and recoverable thereunder, do not necessarily mean the rent stipulated in the lease.

The limitation of his right of recovery to $30 was probably inserted as an inducement to the plaintiff to bring his action speedily, and before by lapse of time the tenant could reasonably presume that the landlord was acquiescing in his holding over, and on that presumption arrange for holding another term. It does not support the theory that the rent recoverable is the rent stipulated for in the lease under which the defendant originally obtained the right to take possession of the premises, but by the force of which that right has ceased to exist. By section 27 the defendant, on appealing the case to the County Court, is required to give security by way of recognizance " to pay all the rent then due and all the intervening rent, damages, and costs." This foreshadows the intent and purpose to secure to the plaintiff *full compensation* for the use of the premises while the defendant is allowed to . hold possession after the termination of his lease. It further provides that if the plaintiff recovers he may recover to the full extent of the recognizance by *scire facias* or in an action of debt thereon. By the act of 1842, by which this remedy was first given, this was the plaintiff's only way to recover the rent, damages, and costs, when the defendant appealed to the County Court. By a subsequent amendment the plaintiff, if he recovers on the appeal, is allowed to have judgment for and recover, not only the possession of the demanded premises, but all the rent due up to the time of the rendition of the judgment. The duty of the defendant on appealing to give security by way of recognizance in the same terms as before, and the right of the plaintiff to recover thereon by *scire facias* or in an action of debt, remains the same as before the amendment. As the statute now is, the plaintiff can have judgment for all the rent due up to the time of the rendition of the judgment, and, if the same is not collected ot

Baldwin *v.* Skeels.

the defendant, can proceed against the sureties on the recognizance by *scire facias* or in an action of debt. As the sureties in the recognizance cannot be held for any greater amount than can the defendant, the principal in the recognizance, it is manifest that the Legislature did not intend to lessen the amount which the plaintiff could recover by the judgment in the original action from what it had been when his only remedy was on the recognizance. There is, therefore, nothing in this section which gives countenance to the defendant's claim. It has been said that this statute was passed in the interest of poor tenants, inasmuch as with this summary remedy the landlord would be more inclined to allow them to go into possession than he would if he were compelled to resort solely to the common law action of ejectment, with its delays, and with no security for the accruing rent, to regain possession of the demised premises. But it can hardly be thought that by its passage the Legislature intended to give the tenant an unjust advantage, and to encourage him, when ·rents were advancing, to hold over .by limiting the rents recoverable under it for the holding over to just what had been stipulated in the lease. Such construction of the statute would render it a discouragement rather than an encouragement to landlords to allow poor tenants to occupy their tenements. But the language of the statute does not compel any such holding. By giving its language the natural import, rent means a fair and reasonable compensation, or return, from the tenant to the landlord for the use of the occupied premises. This construction is just alike to the landlord and tenant. If the value of the use of the premises has increased from what it was when the tenant entered into occupancy, it gives the landlord the advantage of such increase; if it has diminished, it gives the tenant the advantage of such diminution. It neither encourages nor discourages holding over, and readily adapts itself to all cases, where the rent is not, as well as where it is, agreed upon in the original leasing, whether payable in money, services, or specific chattels.

The foregoing being the construction placed upon the statute by a majority of the court, the judgment of the County Court is affirmed.