Chatard, Bishop, *v.* O'Donovan.

---

No. 9803.

## CHATARD, BISHOP, *v.* O'DONOVAN.

REAL ESTATE, ACTION TO RECOVER.—*Master and Servant.—Bishop and Priest.—Tenant.*—Under the rules and customs of the Roman Catholic Church, a priest in charge of a congregation, holding his place at the will of the bishop of the diocese, and occupying the church property, including dwelling-house, only as an incident of his employment as priest, is not a tenant. His possession is more like that of a servant.

SAME.—*Landlord and Tenant.*—When the occupation of a house by a servant is connected with the service, or is required by'the employer for the necessary or better performance of the service, the occupation is as servant, not as tenant, and the possession is that of the master.

Chatard, Bishop, *v.* O'Donovan.

SAME.—*Right to Possession.*—In such case, upon a termination of the service, the right to occupy ceases.

From the Hendricks Circuit Court.

*C. Foley, T. A. Hendricks, C. Baker, O. B. Hord* and *A. W. Hendricks,* for appellant.

*J. V. Hadley, E. G. Hogate* and *R. B. Blake,* for appellee.

WOODS, J.—Action by the appellant to recover of the appellee the possession of certain real estate. The circuit court sustained a demurrer for want of facts to the complaint, and error is assigned upon that ruling.

The complaint shows that on the 20th day of July, A. D. 1876, the Right Reverend Maurice De St. Palais was, and for many years immediately preceding that date had been, the Roman Catholic Bishop of Vincennes, and as such Bishop had ecclesiastical authority, jurisdiction and control of the Roman Catholic Diocese of Vincennes, which Diocese was then, and is now, composed of the counties in the State of Indiana lying south of the north lines of the counties of Vermillion, Parke, Putnam, Hendricks, Marion, Hancock, Henry and Wayne, in the State of Indiana, the county of Hendricks, in said State, being then and now one of the counties included within, and composing a part of, the said Diocese. That, according to the laws, rules, regulations and customs of the Roman Catholic Church, it was then, and continuously ever since has been, and is now, the duty of the person filling and occupying the position of Bishop of the said Diocese, as such Bishop, to look after, supervise, manage and control the various Roman Catholic congregations in the Diocese, and to look after, supervise, control, hold and own all the property, real, personal and mixed, in use' by all of the Roman Catholic congregations in said Diocese, particularly houses and lands used for religious worship, and for residences for pastors of such congregations, and to exercise authority over, and control the various persons in charge of such congregations as pastors thereof, in ministering to and serving such

congregations as such pastors, and as such Bishop, in the exercise of his discretion, to continue such persons as such pastors, suspend and remove them from their positions as such pastors, and deprive them of all their rights and privileges pertaining to such positions as such pastors, and when such persons shall be so suspended or removed from their respective positions as such pastors, then, according to the said laws, rules, regulations and customs, it was, and continuously ever since has been, and is now, their duty to at once deliver up and surrender to the Bishop of the said Diocese all the property, real, personal and mixed, of which said persons had the occupancy or possession as such pastors of such congregations, at the time of such suspension or removal.

That on said 20th day of July, A. D. 1876, Thomas Corliss, Timothy Quinn and Martin Dugan, they then being the owners in fee simple of the real estate hereinafter described, together with their wives, executed to the said Right Reverend Maurice De St. Palais their deed of conveyance of that date, whereby they conveyed and warranted to the said " Rt. Rev. Maurice De St. Palais, D.D., and his successors, in trust for the Catholic congregation of Brownsburg, Indiana," the said real estate, which deed was duly recorded on the 26th day of July, 1876, in the recorder's office of Hendricks county, Indiana. That "the Catholic congregation of Brownsburg, Indiana," was at the time an unincorporated congregation of members of the Roman Catholic Church, and not organized pursuant to any law of the State of Indiana, and was then subject to the ecclesiastical authority, jurisdiction and control of the said Maurice De St. Palais as said Bishop of said Diocese of Vincennes, and was then and is now popularly known as St. Malachai's Roman Catholic Church, of Brownsburg, Hendricks county, Indiana.

That the said Maurice De St. Palais died on the 28th day of June, A. D. 1877, a resident of Knox county, in the State of Indiana, being at the time such Bishop of the said Diocese, and holding and owning the right and title conveyed to him

by the said deed of conveyance, to the said real estate, and leaving his last will and testament, which was duly proven and admitted to probate at the said county of Knox, on the 28th day of July, A. D. 1877, whereby he did will and devise all his estate, whether real, personal or mixed, situated in said Diocese of Vincennes, in the State of Indiana, or elsewhere in the United States of America, to Most Reverend John Baptiste Purcell, Archbishop of Cincinnati, Ohio, and his heirs and and assigns forever, in as full and ample a manner as he, the testator, had held and enjoyed the same, and for the like purposes, to wit: for the sole use and benefit of the Catholic Church of the Diocese of Vincennes, Indiana, in the same manner and form as he had himself enjoyed the same, the said devisee being requested to convey all such estate as he received by the will to the testator's successor in his office as Bishop of the Diocese of Vincennes, Indiana, to have and to hold the same to him and his heirs and assigns forever, in the same mannner and form and for the same uses as the testator possessed the same. That after the death of the said Maurice De St. Palais, to wit, March 26th, 1878, the said Francis Silas Chatard was duly named and appointed by the head of said Roman Catholic Church, the Supreme Pontiff, the Pope at Rome, the successor of the said Maurice De St. Palais, as said Bishop of Vincennes, and entered upon the discharge of the duties of that office and position, in the month of August, A. D. 1878, having all the ecclesiastical authority, jurisdiction and control of the said Roman Catholic Diocese of Vincennes, that his predecessor had as such Bishop, and having all of the duties to perform and discharge concerning and appertaining to the said position and office of Bishop of the said Diocese, that his said predecessor had to perform and discharge, according to the laws, rules, regulations and customs of the Roman Catholic Church.

That after the said Francis Silas Chatard entered upon the discharge of the duties of the position of Bishop of said Diocese, as above mentioned, to wit, October 30th, 1878, the said

John Baptiste Purcell, Archbishop of Cincinnati, Ohio, for the purpose of carrying into effect the said last will and testament of said Maurice De St. Palais, executed to the plaintiff his certain deed of conveyance, whereby he bargained, sold, granted, conveyed and confirmed to the plaintiff as Bishop of said Diocese of Vincennes, and as the successor therein and thereto of the said Maurice De St. Palais, and to the heirs and assigns of the plaintiff forever, all and singular, the estate of every kind and description, whether real, personal or mixed, and wheresoever situated, that was devised to him, said Purcell, by the said last will and testament of the said Maurice De St. Palais, late Bishop of said Diocese, as aforesaid, which property said deed recited consisted of churches for religious worship, and personal property connected therewith, school houses, asylums for charitable uses and purposes, and all other property, real, personal or mixed; all which property, by the terms of said deed, the plaintiff, as Bishop of said Diocese, was to have and to hold to him, his heirs and assigns forever, in fee simple.

That at the time the said Francis Silas Chatard entered upon the exercise and discharge of the duties of the office and position of Bishop of Vincennes, as aforesaid, and from that time continuously up to the present time, and at this time, the said county of Hendricks was, has been, and is now, situated within the said Roman Catholic Diocese of Vincennes, and subject to the ecclesiastical authority, jurisdiction and control of the said Francis Silas Chatard, as such Bishop of said Diocese of Vincennes; and that according to the laws, rules, regulations and customs of the Roman Catholic Church above mentioned, it was at that time, and continuously ever since that time has been, and is now, his duty as such Bishop to look after, supervise, manage and control the various Roman Catholic congregations within the said Diocese, and to look after, supervise, control, hold and own all the property, real, personal and mixed, in use by all the Roman Catholic congregations within the said Diocese, particularly houses and

lands used for religious worship and for residences for pastors of such congregations, and to exercise authority over and control the various persons in charge of such congregations, as pastors thereof, in ministering to and serving such congregations as such pastors, and as such Bishop, in the exercise of his discretion, to continue such persons as such pastors, suspend and remove them from their positions as such pastors, and deprive them of all the rights and privileges pertaining to such positions as such pastors, and according to the laws, rules, regulations and customs of the Roman Catholic Church above mentioned, when such persons shall be so suspended or removed from their respective positions as such pastors, it was then, and continuously ever since has been, and is now, their duty to at once deliver up and surrender to him, the said Francis Silas Chatard, as the said Bishop of the said Diocese, all the property, real, personal and mixed, of which such persons respectively had the occupancy or possession as such pastors of such congregations, at the time of such suspension or removal; the authority, jurisdiction, rights, privileges and duties of the said Francis Silas Chatard as such Bishop of such Diocese, being the same as were the authority, jurisdiction, rights, privileges and duties of his predecessor, the said Maurice De St. Palais, while he, the said Palais, filled the position of and was the Bishop of the said Diocese, as above mentioned. That at the time the said Francis Silas Chatard entered upon the exercise and discharge of the duties of the position of Bishop of the said Diocese of Vincennes, to wit, in the month of August, A. D. 1878, as aforesaid, Dennis O'Donovan, the defendant, was filling the position of pastor of the said Roman Catholic congregation at Brownsburg, by appointment of the said Maurice De St. Palais, while he was filling the position of and was Bishop of the said Diocese of Vincennes, as above mentioned, the said appointment having been made, and the said Dennis O'Donovan having entered upon the discharge of the duties of the position of said pastor, in the spring of the year, A. D. 1877, and was in possession of

the said real estate, occupying and using for his residence the parsonage house situated thereon, and, together with said congregation, occupying and using for the purpose of religious worship the house situated thereon, set apart for and dedicated to religious worship; such possession having been taken by the said O'Donovan in accordance with the laws, rules, regulations and customs of the Roman Catholic Church, which required him, as such pastor, to occupy and use for his residence the parsonage house situated on the said real estate, and, together with the said congregation, to occupy and use for religious worship the house situated thereon, set apart for and dedicated to religious worship, the better to enable the said O'Donovan to serve and minister to the said congregation as such pastor, so long as he should continue to be such pastor, but not for any longer time; such occupancy and use being necessary to the proper and better performance of the duties pertaining to said pastorate; said possession of said real estate, by the said O'Donovan, not being by any other right; and, according to the said laws, rules, regulations and customs, and which were in force at the time, and have continued in force ever since said O'Donovan took such possession and are now in force, it would become the duty of the said Dennis O'Donovan, should he be suspended or removed from the said position as the said pastor of said congregation, to at once deliver up and surrender to the Bishop of the said Diocese the possession of the said real estate, so far as the same should be in his possession. That at the time said Dennis O'Donovan was appointed such pastor and took such possession of said real estate, as aforesaid, he was a priest of the Roman Catholic Church, and was well acquainted with all the laws, rules, regulations and customs of that church hereinbefore mentioned and referred to, and was then and ever since has been amenable, as a priest, to all of said laws, rules, regulations and customs.

That on the 15th day of December, A. D. 1880, acting in the exercise of his discretion and in the line of his duty as said

Bishop of the said Diocese, he removed the said Dennis O'Donovan from the position of pastor of the said congregation of the said "St. Malachai's Roman Catholic Church, of Brownsburg, Hendricks county, Indiana," and deprived him of all the privileges and rights incident and pertaining to said position, and on the 26th day of April, A. D. 1881, he, the plaintiff, caused a written notice to be served on the defendant to deliver up to the plaintiff possession of the said real estate, at the expiration of one month from that time, but which removal, deprivation and notice the defendant has wholly disregarded, and without right and wrongfully and unlawfully continues in and retains and now has possession of the said real estate, and continues to reside in the pastor's residence situated thereon, and holds possession of the house situated thereon, set apart for religious worship, keeping the same locked and fastened up, and with threats, menaces and force, preventing the priest sent by the plaintiff since the said removal and deprivation of the said O'Donovan, to the said congregation, to minister to them and hold religious worship with them, from performing the said functions in the said house set apart for religious worship, situated on the said real estate as aforesaid, and in consequence the said priest so sent as aforesaid, and the said congregation, have been compelled to rent a hall in said town of Brownsburg, in which to hold, and in which said priest and congregation do hold, their religious worship and perform their religious services. That the time designated in the said written notice served on the defendant, as aforesaid, to wit, one month, at the expiration of which to deliver up to the plaintiff possession of the said real estate, was reasonable time to have done so, the defendant being an unmarried man, and having no family but one servant. That the plaintiff is entitled to the possession of the said real estate, and that he is the owner thereof in fee simple, in trust for the said congregation of St. Malachai's Roman Catholic Church of Brownsburg, Hendricks county, Indiana, and that defendant unlawfully keeps him out of possession thereof.

Wherefore the plaintiff demands judgment for possession of the said real estate and for all general relief to which he is entitled.

We have no brief from the appellee. It is stated in the appellant's brief, that the ruling of the circuit court was put upon the ground that the facts alleged in the complaint showed the relation of landlord and tenant between the parties, and that sections 2 and 3 of the act concerning that relation, (2 R. S. 1876, p. 338; R. S. 1881, p. 1128,) made it a tenancy from year to year, determinable by a three months' notice prior to the expiration of a current year.

The question thus presented is plainly an important one, not only as the decision may affect the policy and administration of the affairs of the church directly concerned, and perhaps other church societies which furnish houses for the use of their pastors, rectors or preachers, but the owners and occupants of real property generally; for it is readily conceivable that in many instances the owner and the tenant will be, in all essential respects, in the same legal relation as the parties to this record,—as, for example, the servant brought into the dwelling, or upon the premises of the employer, and, as an incident to the employment, allotted a room or tenement to occupy while the service lasts; the mechanic or laborer, who, by the terms of his engagement, has the possession or use of a house belonging to the employer, and for which the rent is to be deducted from his wages, or for which he is to pay no specified rent, and makes compensation only by accepting less wages than he would receive if he occupied a house of his own.

While these supposed cases, like the one before us, show the parties in relations somewhat like the ordinary relation of landlord and tenant, they are yet clearly and broadly distinguishable therefrom.

The case of *Kerrains* v. *People*, 60 N. Y. 221, is instructive. It was there held that "Where the occupation of a house by a servant is connected with the service, or is required by the employer for the necessary or better perform-

Chatard, Bishop, v. O'Donovan.

ance of the service, the occupation is as servant, not as tenant, and the possession is that of the master." In the course of the opinion in the case, CHURCH, C. J., says : " Such was clearly the case of *Haywood* v. *Miller*, 3 Hill, 90, where a farmer hired a man and his wife to work a farm for wages. The occupation of the house was necessary to the performance of the service ; and *The People* v. *Annis*, 45 Barb. 304, was substantially the same, although I am unable to agree with the learned judge who delivered the opinion in that case, that immediately upon the termination of the service a tenancy at will, or by sufferance, springs up. * * * The question depends upon the nature of the holding, whether it is exclusive and independent of, and in no way connected with the service, or whether it is so connected, or is necessary for its performance. And this, I think, is the result of all the cases. The question has often arisen in England, under the poor laws, to determine what occupation would confer a settlement, the courts recognizing, as controlling, the distinction between an occupation as a tenant or as a servant." (Cases cited) " The case of *Hughes* v. *Chatham*, 5 M. & G. 54, arose under the reform act, requiring a registry of voters, the statute requiring that the person should *occupy as owner or tenant.* * * * FINDAL, C. J., in delivering the opinion of the court, said : 'There is no inconsistency in the relation of master and servant with that of landlord and tenant. A master may pay his servant by conferring on him an interest in real property, either in fee for years or at will, or for any other estate or interest, and if he do so, the servant then becomes entitled to the legal incidents of the estate, as much as if it were purchased for any other consideration.' * * * 'And, as there is nothing in the facts stated to show that the claimant was required to occupy the house for the performance of his services, or did occupy in order to their performance, or that it was conducive to that purpose more than any house which he might have paid for in any other way than by his services ; and as the case expressly finds that he had the house as part remuneration for

his services, we can not say that the conclusion at which the revising barrister has arrived is wrong.'

"I have cited the language of the court," says CHURCH, C. J., "because it lays down concisely the correct rule for determining the question involved in this class of cases." And, proceeding with a recital of the facts in the case before him, adds: "The inference from these facts is reasonable, if not irresistible, in the absence of any provision for an allowance for rent, that the house was intended to be occupied by an employe for the benefit of the owner in carrying on the mill. The case thus presented is analogous to that of a person employing a coachman or gardener, and allowing or requiring him to reside in a house provided for that purpose on the premises; or a farmer who hires a laborer for wages, to work his farm, and live in a house upon the same. In these cases the character of the holding is clearly indicated by the mere statement of facts."

"Many servants," says MANSFIELD, C. J., in *Rex* v. *Stock,* 2 Taunt. 339, "have houses given them to live in, as porters at park gates: if a master turns away his servant, does it follow that he can not evict him till the end of the year?" To the same effect, see *McQuade* v. *Emmons,* 38 N. J. L. 397; *Doyle* v. *Gibbs,* 6 Lans. 180.

While it may not be said, upon the facts of the complaint, that the defendant was the hired servant of his Bishop, it does appear that he was appointed to his position by and held it at the discretion of the Bishop, and that his possession of the property was only an incident to his appointment, the better to enable him to discharge the duties of his office, and when, in the exercise of that discretion, which by the rules and customs of the church he had the right to employ, the Bishop removed the defendant from his charge or pastorate over the congregation, his right to possession of the property at once necessarily ceased.

If, under the circumstances, the parties should be deemed to have come under a contract relation to each other, the plain

meaning of the contract was that when the defendant should cease to be pastor, which might be at the will of his Bishop, he should cease forthwith to occupy the property, there being, from the nature of the case, no right of occupancy except as an incident to the performance of the duties of pastor. And if this be regarded as a tenancy, it was a tenancy at will, and determinable " by one month's notice, in writing, delivered to the tenant," which notice the complaint shows to have been given.

We are, however, of the opinion that the relation of the parties was more like that of master and servant—the possession of the priest being, in fact, the possession of his superior, the Bishop, who had power, at any time and upon his own judgment or discretion, to remove one and install another in the office of pastor, and in the possession of the property of the office.

The judgment is reversed, with costs, and with instructions, to overrule the demurrer.