## CYNTHIA S. MEAD *v.* FRED A. OWEN.

May Term, 1907.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed September 2, 1907.

*Landlord and Tenant—Letting Farm on Shares—Incidental Oc-*
*cupancy of Tenement—Effect—Principal and Agent—Au-*
*thority Conferred—Arbitrator—Witnesses — Competency—*
*Husband and Wife—No. 60, Acts 1904.*

It is essential to the maintenance of the action afforded by V. S. 1560,
frequently called "justice ejectment," that the relation of landlord
and tenant exist, and that the tenant hold possession of the prem-
ises after the termination of the lease, or after breach of a
stipulation thereof by him or a person holding under him.

Under the ordinary contract for carrying on a farm "at the halves,"
the parties are tenants in common of the products of the farm, and
the relation of landlord and tenant does not exist.

Plaintiff residing on a farm belonging to an estate of which she was
administratrix, made an oral agreement with defendant, whereby
he was to operate the farm on shares for a term of years, and as
"a part of the agreement under which he occupied to carry on the
whole farm," he was to occupy, free of expense, and have the ex-
clusive possession of one of the tenement houses on the farm,
plaintiff to continue to live in the farmhouse, and "neither party
to interfere with the other in the exercise of such possession by
each." *Held*, that defendant was not tenant of plaintiff in his oc-
cupancy of the house under the above agreement; that such oc-
cupancy was a mere incident to the operation of the farm on shares,
in respect of which the relation of landlord and tenant did not
exist; and that, therefore, the action given by V. S. 1560, frequently
called "justice ejectment," would not lie to recover possession of
the house.

An appointment as arbitrator and agent to settle differences with an-
other, who had been occupying a house on a farm under an agree-
ment whereby he was to carry on the farm on shares, does not

18

carry with it authority to extend the time within which the house may be occupied to the time of settlement.

Where, in an action of "justice ejectment" under V. S. 1560 to recover possession of a house, the defence was that defendant was trying to effect a settlement and was to vacate when the settlement was made, evidence by defendant's wife that she heard him say that he was willing to move, if he could get a satisfactory settlement, was not within No. 60, Acts 1904, forbidding a wife to testify against her husband as to any conversation had by him with her or with another person.

ACTION, under V. S. 1560, frequently called "justice ejectment," to recover possession of a dwelling house. Plea, the general issue. Trial by jury at the June Term, 1906, Addison County, *Miles,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. At the close of all the evidence "the defendant moved that the court direct a verdict for him on the ground that the testimony showed that the contract was a letting at the halves or on shares, creating a tenancy in common, so that the parties had a joint interest in the products and income of the farm, thereby creating a relation between the parties other than the relation of landlord and tenant; and the defendant further moved for a verdict on the ground that no reasonable notice had been shown to have been given the defendant to vacate the premises in question and that the court should direct a verdict for the defendant on these two grounds as a matter of law. The court overruled both motions, to which rulings the defendant excepted."

*H. S. Peck* and *F. L. Fish* for the defendant.

The summary remedy, known as justice ejectment, was enacted in England under II Geo. II C. 19, §16, in 1737, and has been adopted in nearly all the states. But the relation of landlord and tenant must exist under justice ejectment. 18 Am. & Eng. Enc. 437, note 1. In the ordinary letting at the halves the parties are tenants in common of the products of the farm. *Hunt* v. *Rublee,* 76 Vt. 448. This action of justice ejectment does not lie against one unless he is a technical lessee; when one takes a farm on shares he is not a lessee. *Wheeler* v. *Wheeler,*

77 Vt. 177; *Frost* v. *Kellogg*, 23 Vt. 308; *Warner* v. *Hoisington*, 42 Vt. 94.

*Davis & Russell* for the plaintiff.

Notice to quit is never necessary unless the relation of landlord and tenant subsists; nor where the party in possession repudiates such relation is notice to quit or demand of possession necessary. *Chamberlin* v. *Donahue*, 45 Vt. 50.

When a defendant in ejectment denies on trial his own tenancy, or requires proof thereof, he cannot insist on want of notice to quit as a defence. *Catlin* v. *Washburn*, 3 Vt. 25.

The court properly refused to direct a verdict. Even if the jury found that the letting was on shares the action would lie. None of the cases decided by this Court which are relied upon as holding that a letting upon shares does not constitute a lease, and that the parties are tenants in common of the crop, are in point. In none of these cases was anything but the title to the crop questioned. In such cases the parties may be tenants in common as to the products and not as to the land. She had a right to receive one-half the net income. She had no control over the products. The defendant was to sell and dispose of them. *McClellan* v. *Whitney*, 65 Vt. 510.

The ordinary contract of letting land upon shares creates the relation of landlord and tenant, the tenant having against the landlord as well as against others the possession of the land and the rights growing out of that relation. *Wentworth* v. *Railroad*, 55 N. H. 540; *Moulton* v. *Robinson*, 27 N. H. 550; *Clark* v. *Cobb*, 4 Greene (Iowa) 461; *Randall* v. *Chubb*, 46 Mich. 311; *Hurd* v. *Darling*, 14 Vt. 214; *Hadley* v. *Havens*, 24 Vt. 520.

The plaintiff claimed the defendant was wrongfully in possession of the tenement house which he occupied. Under the agreement the defendant was to have this house during the term free of rent or expense, and of this house it appeared that the defendant had exclusive possession. It was to recover possession of this house that plaintiff prosecuted her action. She did not claim to recover possession of the farm itself but only of the tenement house occupied by the defendant. The verdict was to recover possession of this house. The plaintiff had di-

vested herself of her control of the tenement house. The defendant had entered and was in exclusive possession, holding under his agreement with the plaintiff, and in subordination to her title. This is sufficient. 18 Am. & Eng. Enc. 605; *Branch v. Doane,* 17 Conn. 402; *Warner v. Abbey,* 112 Mass. 355; *Orcutt v. Moore,* 134 Mass. 48; *Herskell v. Bushnell,* 27 Conn. 43; *Doremus v. Howard,* 23 N. J. L. 393; *Walworth v. Jeness,* 58 Vt. 675.

In nearly all the cases in which arrangements like the one at bar have been brought before this Court, they have been treated as leases, and the terms "lessor and lessee," and "landlord and tenant" have been used by this Court in describing the arrangement and the parties. *Edson v. Colburn,* 28 Vt. 631; *Wilmarth v. Pratt,* 56 Vt. 474; *Smith v. Meach,* 26 Vt. 233; *Smalley v. Corliss,* 37 Vt. 486; *Hickok v. Buck,* 22 Vt. 149; *Brown v. Burrington,* 36 Vt. 41; *Blood v. Spaulding,* 57 Vt. 422; *Sowles v. Martin et al.,* 76 Vt. 180; *Hunt v. Rublee,* 76 Vt. 448; *Foss v. Stanton,* 76 Vt. 365.

If a person be placed on land as a mere occupier without any terms prescribed, he is strictly a tenant at will. 1 Taylor, Landlord and Tenant, 59; *Herrill v. Sizeland,* 81 Ill. 457; *Michael v. Curtis,* 60 Conn. 367; 24 Cyc. 1037; *Johnson v. Johnson,* 13 R. I. 467; *Danne v. Dame,* 38 N. H. 434; *Larned v. Hudson,* 60 N. Y. 104. The payment of rent is not an essential element of a lease. Any mutual advantage or detriment is sufficient.

TYLER, J. The plaintiff brought this suit under V. S. 1560, to recover possession of a certain dwelling house situated upon her farm, claiming that the defendant was holding over after the termination of a lease from her. The section of the statute relied upon reads:

"When the lessee of lands or tenements, whether the lease is by writing or parol, or when a person holding under such lease, holds possession of said demised premises without right, after the determination of the lease by its own limitation, or after breach of a stipulation contained in the lease by the lessee or a person holding under him, the person entitled to the possession of the premises may have from a justice a writ to restore him to the possession thereof."

The defendant contends that the relation of landlord and tenant did not exist between the plaintiff and himself and therefore that the case does not fall within the terms of this section.

It appeared that the plaintiff, as administratrix of her deceased husband's estate, resided upon a farm in Addison County, belonging to the estate, and that prior to March, 1902, she made an oral agreement with the defendant by which he was to occupy, free of rent or expense, one of the tenement houses situated on the farm and carry on the farm for a term of years, while the plaintiff was to continue to live in the farmhouse and use a portion of the horse barn. "His occupancy of the tenement house was a part of the agreement under which he occupied to carry on the whole farm." He was to have "the exclusive possession of the tenement house," and "neither party was to interfere with the other in the exercise of such possession by each."

Each party was to furnish certain things for the farm, and each was to have a sufficient amount of the produce for family use without accounting for it. It was a dairy farm, and it was agreed by the parties that the milk should be carried to a creamery and the checks received therefor divided between them.

The defendant was to sell everything that was produced and divide the profits with the plaintiff every month, and by "profits" it was meant that all the expenses incident to running the farm were to be deducted from the income and the remainder be divided monthly.

The plaintiff guaranteed the defendant $35 a month above his expenses, and claimed that the agreement was for only two years from March 4, 1902. The defendant claimed that the agreement was that he should carry on the farm upon shares or at the halves until Mrs. Mead's daughter, then 13, should become of full age; that he was to have half the crops and half the income "in the usual way of figuring at the halves," and that he and the plaintiff were to make partial settlements from time to time. The defendant moved into the tenement house in March, 1902, and began work under the contract.

It appeared that the parties made several settlements and divided the net income; that in the second year some differences arose which they agreed to arbitrate; that on Feb. 28, 1904, they chose arbitrators who commenced their hearing one or two days afterwards, in the house now in suit, and had nearly

completed it, when, on March 6, the plaintiff revoked the agreement to arbitrate and on the following day brought this suit without previous notice to the defendant to vacate the premises. The defendant was then living in the house in question, taking care of the stock and produce, with the knowledge of Mrs. Mead and her agent. He then owned a half interest in the stock and produce and claimed a large balance his due·on settlement.

The parties did not differ essentially in their respective versions of the agreement, for there is no legal distinction between dividing the products, each party selling his half, and one party selling the whole and dividing the money between them.

1.   Under the decisions of this Court the plaintiff and defendant were tenants in common of the products of the farm. *Aiken* v. *Smith,* 21 Vt. 172; *Frost* v. *Kellogg,* 23 Vt. 308; *Willmarth* v. *Pratt,* 56 Vt. 474; *Willard* v. *Wing,* 70 Vt. 123.   This doctrine is recognized in the recent cases of *Sowles* v. *Martin et al.,* 76 Vt. 180, and *Hunt* v. *Rublee,* Id. 448.   But this is not determinative of the legal quality of the defendant's occupancy of the house, for though he carried on the farm and occupied the house under one agreement, he had the "exclusive possession" of the house, which precludes the idea of a tenancy in common.

2.   The important question in the case is whether the relation of landlord and tenant existed between the parties, or whether the defendant's occupancy of the tenement house was not, under the contract, a mere incident to his carrying on the farm. If it was the latter this action will not lie, for this Court has uniformly held it essential to the maintenance of this form of action that the relation of landlord and tenant must exist, and that this remedy can only be resorted to when the tenant holds possession of the premises after his right to occupy has terminated.   *Pitkin* v. *Burch,* 48 Vt. 521; *Baldwin* v. *Skeels,* 51 Vt. 121; *Barnes* v. *Tenney,* 52 Vt. 557; *Horan* v. *Thomas,* 60 Vt. 325.

The questions involved require a consideration of the authorities upon the subject of incidental occupancy.

In *Hughes* v. *Overseers of Chatham,* 5 M. & G. 54, the question was whether a master ropemaker occupied a certain house in the royal dockyard as tenant, or as a servant of his employer, as affecting poor-rates and his right to vote.   The

house belonged to the lords of the admiralty. Hughes paid no rent for the house, but occupied it as a part remuneration for his services. If he had not had the house he would have had an allowance for a house in addition to his salary.

Tindal, C. J., held that a master might pay his servant by conferring on him an interest in real property, either in fee, for years, at will, or for any other estate or interest; but that a servant might occupy a tenement of his master, not by way of payment for his services, but for the purpose of performing them; "that he might not be *permitted* to occupy, as a reward, in the performance of his master's contract to pay him, but *required* to occupy in the performance of his contract to serve his master"; * * * that "as there was nothing in the facts stated to show that the claimant was *required* to occupy the house for the performance of his services, or did occupy it *in order* to their performance, or that it was *conducive* to that purpose more than any house which he might have paid for in any other way than by his services, and, as the case expressly finds that he had the house as part remuneration for his services, we can not say that the conclusion arrived at by the revising barrister is wrong." The revising barrister had found that the plaintiff occupied the house as tenant.

A distinction is thus clearly drawn between the occupancy of a house as an incident of the occupant's employment, it being immaterial to him whether he occupy that house or another at the employer's expense, and an occupancy that is for the employer's benefit. Of the former class is where a man is employed in a public office and is allowed to live in a house upon the premises belonging to the government. It is not considered the dwelling house of the occupant. The same is true where the occupier is a servant of a public company. See cases cited in plaintiff's brief in *Hughes* v. *Overseers*. The same rule was applied in *Chatard, Bishop* v. *O'Donovan,* 80 Ind. 20, where a priest, holding his place at the will of the bishop of the diocese, occupied the church property, including a dwelling house. As his occupancy was connected with the service and was required for the better performance of it, it was therefore held to be that of a servant and not that of a tenant.

A nobleman, for instance, would have, attached to his manor, a coachman's house and a gardener's house. His coachman and

gardener would be expected to occupy their respective houses for his convenience and on account of their location with reference to the work to be performed. As Lord Mansfield said in *King* v. *Stock,* 2 Taunt. 340: "Many servants have houses given them to live in, as porters at park gates; if a master turns away his servant, does it follow that he cannot evict him till the end of the year?" In such cases it is clear that the occupancy is a mere incident of the employment and does not partake of the nature of a tenancy.

In *Davis et al.* v. *Williams,* 130 Ala. 530, 89 Am. St. Rep. 55, Williams built a house for the Davises on their land and occupied it about two years while he was "looking after business" for them. Apparently nothing was said about rent until the end of two years, when Williams began to pay five dollars a month as rent. It was held that his occupancy of the house for the two years, being for the purpose of looking after the business of the other parties, did not create the relation of landlord and tenant, but was that of employer and employee, or of master and servant; that it was a part of the contract for service and operated as a portion of the consideration of the agreement.

*Haywood* v. *Miller,* 3 Hill 90, is often cited upon this question. In that case the defendant hired the plaintiff to work on the defendant's farm for a year and the plaintiff's wife to do housework. There was a dwelling house on the farm into which the plaintiff moved with his family. Some differences arose between the parties, and the defendant entered the house and put the plaintiff out of it. The Supreme Court said that it was assumed by the contract that the defendant should furnish a house for the plaintiff, "that every master agrees to furnish a house, or house-room, which is the same thing, for his domestic servants"; held, that the relation of the parties was that of master and servant.

It is apparent from the foregoing authorities that whether the occupancy of a house is, in a given case, that of a tenant or of a servant or employee, depends upon the language of the agreement and the attending circumstances. As Church, C. J., said in *Kerrains* v. *People,* 60 N. Y. 226, the question depends upon the nature of the holding, whether it is exclusive and independent of and in no way connected with the service, or whether it is so connected, or is necessary for its performance.

In that case the plaintiff in error agreed to work for a year for Son in his mill at thirteen shillings a day and have the use of a house that belonged to the mill property, the same house that he had before occupied. Son, for cause, discharged the plaintiff, ordered him out of the house and went with men to throw out his furniture. The question was whether the plaintiff was in occupancy as a tenant or as a servant; held that the occupancy was incidental to the employment. The case was precisely like *Chatard* v. *O'Donovan, supra.* In such cases the occupancy is clearly incident to the employment, that is, dependent upon it, appertaining to it, so that the idea of remuneration does not enter into the case.

The tests are clearly stated in 24 Cyc. 880: Where an agent is placed in possession of premises, by the owner, for the management thereof, he is not a tenant; nor where an employee is allowed to occupy his employer's premises does he become a tenant in case the employer has general control and supervision over the premises so occupied; nor does the employee become a tenant where his occupancy is connected with the service, or is required by the employer for the necessary or better performance of the service. "But," says the writer of the text, "where the control is parted with, the tenant will not be regarded as occupying as a servant or agent, although other circumstances may point to such relation." The same rules are given in 18 Am. & Eng. Ency. 171. These rules seem to be established by abundant authority.

This question is well considered in *Bowman* v. *Bradley,* 17 L. R. A. 213, (Pa.). There it appeared that the defendant owned a farm and hired the plaintiff and his family to do certain kinds of work upon it, for which, by the agreement, the plaintiff was to receive one dollar a day and the use of a house upon the premises to be occupied by himself and family. In an action of trespass for an alleged wrongful ejectment the question was about the duration of the contract, the plaintiff claiming it was for a year, the defendant, that it was terminable at his pleasure. The court said that while the terms of the contract, so far as the parties differed, were for the jury to determine, the terms being fixed, their legal import was for the court to declare, and laid down the rule that the occupancy of a house by a farm hand and his family, who are hired to do work connected with

the farm for a certain price per day and the use of the house to live in, is incidental to the employment, and the right thereto ceased with the service. The court followed the English cases, holding that the plaintiff had no independent right of possession, that his possession of the house, land, animals and farming implements was the possession of his employer; that it was ''an incident of the hiring,'' and ''must fall with the principal.'' The occupancy was likened to that of a porter to a porter's lodge; to that of domestic servants to the rooms which they occupy in the house of their employer.

Applying these rules to the present case, was the defendant a tenant of the plaintiff in the occupancy of the house, or was his occupancy of it a mere incident to his carrying on the farm?

Church, C. J., in the opinion referred to, quoted from the opinion of Tindall, C. J., in *Hughes* v. *Overseers,* because as he said, ''it lays down concisely the correct rule for determining the question involved in this class of cases.'' In that opinion, as we have shown, the English Chief Justice made the essential requirements of an incidental occupancy that it was necessary that the employee should occupy the house for the performance of his services, or did occupy it in order to their performance, or that it was conducive to that purpose more than any house that he might have hired.

In the present case it appears that this tenement house was on the farm and that it was agreed that the defendant should occupy it free of rent. It cannot be said that it was immaterial to him whether he occupied this house or another that he might hire at the plaintiff's expense, for the case does not show that another house was available. This one, situated upon the farm, would, presumably, be more convenient for the defendant in that employment, than one more remote, so that in this sense his employment required his occupancy of this house. It is fairly inferrable from what appears that both parties considered that the defendant's occupancy of this house was more conducive to his employment than any other one would be, if, indeed, another was available. This brings the case within the rules laid down by Tindall, C. J.

It was of course competent for the parties to have created in one contract the relation between them of tenants in common as to the products of the farm and that of landlord and tenant

as to the house occupied by the defendant. He might have been a lessee of the house, whatever his relation to the farm and crops, and that without an agreement to pay rent. But the fact that there was an express agreement that he should not pay rent tends to show that the parties regarded the occupancy as incident to the employment; at all events this was the legal effect of the agreement. This construction gives effect to the words, "The occupancy of the tenement house was a part of the agreement under which he occupied to carry on the farm." The defendant's possession was, in law, the possession of the plaintiff.

In accordance with the views above expressed we hold that the relation of landlord and tenant did not exist between the plaintiff and the defendant in respect to the house, and that, as this relation must exist and there must be a wrongful holding over by the tenant after the termination of his lease, this form of action is not applicable to the case. The defendant's motion for a verdict should have been granted.

The defendant testified that he was induced to sign the arbitration agreement by the promise of the plaintiff's agent, Brownell, that, if he would sign it, he might remain in the house until a settlement was made. If this were a fact the suit was prematurely brought. Brownell denied making the promise and the plaintiff denied his authority to make it. It is unnecessary to decide whether a naked promise by the plaintiff to temporarily extend the defendant's term of occupancy precluded her bringing a suit without notice to the defendant to vacate. It is sufficient to say that the court submitted to the jury the precise question raised by the testimony—whether there was an extension of time in consideration of the defendant's signing the agreement. The jury evidently did not find such promise. There was no error in this instruction.

The court also properly submitted to the jury to find whether —if they found that Brownell made the promise—he had authority to make it. His appointment as arbitrator and agent to settle with the defendant did not carry with it authority to extend the tenancy.

The plaintiff's evidence tended to show that prior to March 4, 1906, the defendant had several times announced his intention not to remain on the farm after that time, and that on one occasion he notified plaintiff that he would not remain after

March 4.    The defendant's wife was introduced by him as a witness and testified about conversations that she had heard her husband have with other persons.    On cross-examination by the plaintiff she testified that she had several times heard him say that he was willing to go if he could get a satisfactory settlement, and that for a time she heard him say this every day.    Under No. 60, Acts of 1904, a wife cannot testify against her husband as to any conversation made by him to her or to another person. But it does not sufficiently appear that Mrs. Owen's testimony was against her husband.    On the contrary, it seems to have been in the line of his defence—that he was trying to effect a settlement and that he was to move when the settlement was made. Error is not predicable upon the admission of this testimony.

*Judgment reversed and cause remanded.*