12422

EX PARTE ASSOCIATED HOTELS
FORT SUMTER HOTEL CO. v. ASSOCIATED HOTELS

(142 S. E., 600)

1. LANDLORD AND TENANT—JURISDICTION OF MAGISTRATE UNDER STATUTE RELATING TO DISPOSSESSING TENANTS HOLDING OVER OR FAILING TO PAY RENT DEPENDS ON EXISTENCE OF RELATION OF LANDLORD AND TENANT (CIV. CODE 1922, § 5279).—Jurisdiction of a Magistrate under Civ. Code 1922, § 5279, relating to dispossessing tenants holding over after expiration of lease or failing to pay rent when due, is dependent on existence of relation of landlord and tenant.

2. LANDLORD AND TENANT—WHETHER PARTIES WERE LANDLORD AND TENANT, DEPENDING ON CONSTRUCTION OF WRITTEN INSTRUMENT, WAS QUESTION OF LAW.—Question whether relationship of parties was that of landlord and tenant, depending upon construction of written instrument, was question solely of law.

3. LANDLORD AND TENANT—AGREEMENT FOR OPERATION OF HOTEL HELD NOT TO ESTABLISH RELATION OF LANDLORD AND TENANT NECESSARY TO GIVE MAGISTRATE JURISDICTION OF PROCEEDING TO DISPOSSESS DEFENDANT (CIV. CODE 1922, § 5279).—Agreement whereby defendants agreed to operate hotel property and deduct certain expenses from gross receipts and whereby defendants were to receive 50 per cent. of net profit for services *held* not to establish relation of landlord and tenant necessary to give Magistrate jurisdiction of proceeding under Civ. Code 1922, § 5279, relating to dispossessing tenant holding over or failing to pay rent.

In original jurisdiction, January, 1928.

Application by Associated Hotels in the original jurisdiction of the Court for a writ of prohibition staying further action in a certain ejectment proceeding instituted by the Fort Sumter Hotel Company against the Associated Hotels.

The agreement and memorandum referred to in the opinion are as follows:

### AGREEMENTS

Oct. 28, 1926.

Ft. Sumter Hotel Company, 30 East Forty-Second St., New York City. Gentlemen: We agree to operate your property for a period of six months from the date of acceptance of this agreement, or November 1, 1926, whichever is the later, with the understanding that from the gross receipts of such operation there shall be deducted and paid the following:

1. All normal operating expenses, including replacement, advertising, payments to Wanamaker on furniture and any other normal expense incurred.

2. Interest on first mortgage bond issue; also taxes and insurance.

3. Six per cent. interest on second mortgage, and all other secondary financing.

We shall advance all funds, in our own opinion necessary to the operation of the hotel.

It is definitely understood that we assume no obligation to pay any other charges except those which are in our opinion essential to the operation of the hotel, and it is further understood that any such advances shall be returned to this company out of the first gross receipts.

After all operating and fixed charges have been paid as above set forth, the balance, if any, shall be considered net profit, of which we shall receive for our services an amount equal to 50 per cent. of the net profit, and the balance or remaining 50 per cent. shall be returned to yourselves. It is understood that no other supervision charge shall be made for our services.

We understand that your present resident manager is Mr. W. A. Senna. We are preparing to continue Mr. Senna in that capacity so long as his services are in our judgment an

asset to the property, and satisfactory to all parties concerned. It is understood that so long as Mr. Senna works under our direction he shall receive a salary of $500.00 per month, and all other employees of the hotel will receive salaries similar to those paid by other hotels of this company of like size and importance.

You will be furnished with our detailed monthly operating statement and copies of our daily reports; all records and books to be kept in accordance with the accounting system approved by the New York Hotel Association. Such records and books will be open for inspection at all times to any of your authorized representatives.

We understand that the furniture in the Ft. Sumter Hotel at the present time, except kitchen equipment and silver, was purchased from the Wanamaker Company under an arrangement whereby periodical rental payments are made to be applied upon the purchase price. We desire to state that we will endeavor to satisfy the Wanamaker Company. However, it is understood that should in the event the furniture be withdrawn from the hotel by the Wanamaker Company, that we will have no redress or claim against you, occurring through such an action.

We understand that it is impossible for you to guarantee our continued possession of the hotel. Further, we agree that this agreement entered into shall be subject to either actual sale or foreclosure, provided, however, that we shall be notified 30 days in advance in case of a private sale of the property.

We shall give bond for the safely keeping of all goods and moneys coming into our hands through the operation of the hotel and the conduct of its business, "except usual wear and tear on building and equipment therein." The amount of the bond to be mutually agreed upon.

This agreement may be extended for any further period upon the mutual consent of the parties hereto.

The hotel will enjoy advantages such as increased purchasing power and careful check on every department.

Very truly yours,

WM. FOOR HOTEL OPERATING CORPORATION,

By Geo. M. Crump, Vice President.

Accepted and approved October 29, 1926:

FT. SUMTER HOTEL COMPANY,

By J. J. Killeen, Vice President.

MEMORANDUM

January 22, 1927.

From W. I. Hamilton to George M. Crump.

Subject: Conference with Mr. Berenson regarding Ft. Sumter Hotel.

In accordance with our arrangement, I spent an hour with Mr. Berenson and present herewith a summary of my understanding of the agreements arrived at.

A. The manager's special account, covering pay roll and minor purchases, is to be kept in the same bank as heretofore, and the regular routine as prescribed in our regulations will be followed in its use.

B. A new account is to be opened in a New York Bank to be known as "the William Foor Hotel Operating Corporation-Ft. Sumter Hotel, Special Account." Checks on this account covering the heavy expenditures are to be vouchered in the Richmond office, signed by a representative of the William Foor Company and sent to New York for countersignature by Mr. Berenson as trustee, together with creditor's invoice. Checks are to be honored by the bank only on the signature of an officer of the William Foor Hotel Operating Corporation, and Mr. Berenson or Mr. Berenson's nominee.

C. I explained to Mr. Berenson that the purchase control system adopted by us was in principle the same as is used in other chain organizations and had been adopted for use in our chain from the system in use in the Boomer-DuPont

Hotels. The purchase system prescribed for all our managers is to be followed.

D. Mr. Berenson is to engage at his discretion any auditor to go over the records of the transactions relating to Ft. Sumter Hotel, and such auditor is to have complete access to any of our records regarding the hotels. It is definitely agreed that copies of his reports are to be filed with our corporation, so that all parties concerned may be working on the same information, auditor's charge to be paid as an operating expense. Expenses of Mr. Berenson or his representative for traveling to and from New York to the Hotel shall also be paid and charged as an operating expense.

E. If Mr. Senna definitely agree to pledge co-operation with the William Foor Hotel Operating Corporation he will remain, subject to the terms of the agreement dated October 28th. It is definitely agreed that if he feels it necessary to write any extra routine reports, he shall file a copy with the William Foor Hotel Operating Corporation.

F. The William Foor Hotel Operating Corporation, through its supervisor of Southern hotels, W. T. Bovard, intends to exercise the same degree of supervision and control in the internal management of the hotel (Ft. Sumter) as it does in the hotels of its chain, no more or no less. If Mr. Senna cannot work comfortably in a chain organization, subject to the customary regulations, he should withdraw. He will be given fair opportunity to do this and will not be removed by the William Foor Company without prior conference with Mr. Berenson. Mr. Berenson expects the corporation to administer the internal affairs of the hotel in accordance with the standard and procedure it commonly follows.

G. The whole intent of this conference and this memorandum is to clarify working relations in such a manner that the hotel may be operated efficiently and economically, but in accordance with the standard of service required in

a hotel of the Ft. Sumter class and type. It is assumed that all parties concerned are working to this end from now on, and to attain it mutual confidence and frankness must prevail. No other methods will be expected or tolerated.

H. Should any further questions arise which might lead to dissatisfaction on the part of Mr. Berenson, Mr. Hamilton agrees to familiarize himself with the operation of the Ft. Sumter Hotel and furnish to Mr. Berenson complete and impartial information to the best of his knowledge.

I. Funds shall be remitted daily direct from the hotel to the bank account in New York City mentioned in paragraph B.

J. This memorandum is incorporated and made a part of the agreement dated October 29, 1926, and is a modification thereof. William Foor Hotel Operating Company, by W. I. Hamilton, Director of Operations. G. L. Miller & Co., Inc., by James Berenson, Trustee in Bankruptcy. Ft. Sumter Hotel Company, by J. J. Killeen.

*Messrs. Simeon Hyde, Jr.,* and *John J. Murray,* for petitioner, cite: *Jurisdiction of Magistrate is dependent upon the existence of the relationship of landlord and tenant:* Sec. 5279, Code; 127 S. C., 472. *Cases distinguished:* 113 S. C., 171. *The relationship of the parties depends upon the construction of a written instrument and solely a question of law is presented for determination:* 24 S. C., 510; 119 S. C., 480; 47 S. C., 243. *Where possession is an incident to the service to be performed relationship of landlord and tenant does not exist:* 16 R. C. L., 579; 67 Atl., 722; 12 L. R. A. (N. S.), 655. *Where no reservation of rent eo nomine or substantially, strong evidence that no lease intended:* 16 R. C. L., 579; 1 Speer's, 408. *Relationship of landlord and tenant not established in contract at bar:* 1 Speer's, 408; 29 S. C., 544. *Cases distinguished:* 119 S. C., 480. *Writ of prohibition should issue:* 84 S. C., 91; 41 S. C., 29.

*Messrs. Middleton & Middleton* for respondent.

April 10, 1928.

The opinion of the Court was delivered by Mr. Justice Cothran.

This is an application, in the original jurisdiction of the Court, for a writ of prohibition, staying further action in a certain ejectment proceeding, instituted by the plaintiff in the civil and criminal Court of Charleston, under Section 5279, Vol. 3, Code 1922. The objection of the petition to the proceeding is a challenge of the jurisdiction of said Court, upon the ground that, as a matter of law, the contract between the parties does not establish the relation of landlord and tenant between them; that is the legal issue in the case, for it is settled that the jurisdiction of a Magistrate, under the section referred to, is dependent upon the existence of that relation. *Stewart-Jones Co. v. Shehan,* 127 S. C., 451; 121 S. E., 374.

The relationship of the parties, depending upon the construction of a written instrument, a question solely of law, is presented for determination. *State ex rel. Sawyer v. Fort,* 24 S. C., 510; *State v. Page,* 1 Speers, 428; 40 Am. Dec., 608. *Columbia Co. v. Jones,* 119 S. C., 480; 112 S. E., 267. *Cothran v. Knight,* 47 S. C., 243; 25 S. E., 142.

A careful consideration of the contract leads us to the conclusion that it establishes the relation of principal and agent, or perhaps of partnership; it certainly does not establish that of landlord and tenant. 16 R. C. L., 579; *Mead v. Owen,* 80 Vt., 273; 67 A., 722; 12 L. R. A. (N. S.), 655; 13 Ann. Cas., 231. *State v. Page,* 1 Speers, 408; 40 Am. Dec., 608. *Charles v. Byrd,* 29 S. C., 544; 8 S. E., 1. *Columbia Co. v. Jones,* 119 S. C., 480; 112 S. E., 267.

The agreement at page 5 of the petition and the memorandum at page 7 will be incorporated in the report of the case.

· It is, therefore, ordered that the prayer of the petition be granted, and that the writ of prohibition issue as prayed for.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE, STABLER, and CARTER concur.