## LOUIS GUIEL, ADMINISTRATOR, *vs.* HAROLD H. BARNES.

Third Judicial District, Bridgeport, April Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and HAINES, Js.

The complaint alleged and the answer admitted that plaintiff's intestate was hired to work on the defendant's farm for $75 per month with the privilege of residing in a house upon the premises and of using all the milk, wood and water necessary for himself and his family as further compensation for his services. In an action to recover damages for his death, caused by his falling into a well situated about ten feet from the house and alleged to have been in a state of disrepair due to the defendant's negligence, the trial court charged the jury that, under the admitted allegations of the complaint, the defendant's duty to the decedent was that of a landlord to a tenant, and was therefore to be measured by the degree of possession and control which he had retained over the well. *Held* that the trial court had misconceived the legal effect of the contract of hiring, as admitted on the pleadings, since it did not create the relation of landlord and tenant with respect to the

well, but only gave to the decedent the privilege of taking water therefrom as part compensation for his labor, and fixed upon the defendant as an employer the duty to inspect and care for the well as an instrumentality used by his servant in the course of his employment.

If the facts as admitted by the pleadings are capable of but one legal construction, the mere fact that a litigant allows his opponent who has misconceived their true effect, to offer evidence in support of a different theory, and even offers evidence himself in rebuttal thereof, does not preclude such litigant from requesting an instruction to the jury which embodies such legal construction.

Argued April 10th—decided June 2d, 1924.

ACTION to recover damages for causing the death of the plaintiff's intestate by negligence, brought to the Superior Court in New Haven County and tried to the jury before *Hinman, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *Error and new trial ordered.*

*Charles S. Hamilton,* for the appellant (plaintiff).

*Joseph F. Berry,* for the appellee (defendant).

KEELER, J. It is admitted that the defendant was on the date alleged the owner of a farm of about six hundred acres, and plaintiff's intestate resided with his family in a house upon the premises, and that the intestate came to his death by means of falling into a well upon the premises while engaged in an attempt to draw water from the same. It is alleged that his death was due to the unsafe condition of the appliances for drawing water, due to negligence on the part of the defendant in not properly inspecting and repairing such appliances.

The first paragraph of the complaint is as follows: "On and prior to the thirty-first day of July, 1921, the defendant was the owner and in possession of a certain piece or parcel of land situated in said town of Wall-

Guiel *v.* Barnes.

ingford, and used by the defendant as a farm, and upon which was a large quantity of stock, also a large amount of produce and upon which the defendant carried on the operations of farming, and on said thirty-first day of July and for some time prior thereto, the said Antonio Guiel was engaged by the defendant to work and labor on said premises and look after the stock and produce thereon, and was to receive, and did receive as compensation therefor the sum of $75 per month in cash, and, in addition thereto, received the right to use and the use and occupation of seven rooms in the house upon said premises for the occupation of himself and his family, and in addition thereto received and had as a part of said compensation all the milk, wood and water which were necessary for the said Antonio Guiel to use for himself and his family."

This paragraph is admitted in defendant's answer. The answer puts in issue the remaining paragraphs which set up the disrepair of the machinery used in connection with the well, the attempt of the intestate to operate the machinery, its breaking, and his death by being precipitated into the well, and charging the death to the negligence of defendant.

It is an admitted fact in the case that the well above referred to was located approximately ten feet from the back door of the house, and that it was the only source of supply to the intestate and his family.

The plaintiff in his first request for an instruction to the jury, repeated substantially the allegations of the first paragraph of the complaint above quoted, and then added the following: "These allegations of the complaint contained in the first paragraph are all admitted by the defendant to be true; so that in your deliberations you may assume that all the allegations of paragraph 1 are true and, being true, it admitted that the defendant was in the use, possession and con-

trol of the farm in question, and that all the plaintiff had was the right to use the rooms in the house and the right to obtain water from the well. This being admitted, left the general possession, management and control of the well in the hands of the defendant, and the plaintiff had the mere right to take water from the well for his use. The plaintiff was not the tenant of the well, and was not given any exclusive right to use or control the same, or in any way bound to keep the apparatus in repair under the admissions that are contained in the answer."

The allegations of the first paragraph of the complaint and the above request to charge founded thereon, raise the question of the nature of the contract between defendant and the intestate, and embody the claim that the use of the house, and the supply of milk, wood and water to the latter, were in the nature of compensation for services, in addition to the cash wages of $75; that is, formed a part of his whole compensation.

In the leading case of *Bowman* v. *Bradley*, 151 Pa. St. 351, 24 Atl. 1062, a state of facts similar to that obtaining in the instant case was considered by the court, after an argument wherein all available authorities seem to have been cited and discussed. Defendant hired plaintiff for one year as a farm laborer, and his service was to include certain services by his wife and son. He was to be paid $1 per day and the use of a house for himself and family. It was held that the relation created was that of master and servant, and not of landlord and tenant. The court says (p. 359): "The subject of this contract was labor. Labor was what Bradley needed and undertook to pay for. It was what Bowman offered to furnish him at an agreed price. The labor was to be performed on the land in its cultivation, in the care of the cows, and the delivery of the milk. . . . The house was a convenient

place for the residence of the laborer. . . . His possession was that of the owner whom he represented, and for whom he labored for hire. . . . His right under the contract of hiring was like that of the porter to the possession of the porter's lodge; like that of the coachman to his apartments over the stable; like that of the teacher to the rooms that he or she have occupied in the school buildings; like that of the domestic servants to the rooms in which they lodge in the house of their employer. In all of these cases and others which might be enumerated the occupation of the house is incidental to the employment. . . . It is not necessary that occupation of a house, or apartments, should be a necessary incident to the service to be performed in order that the right to continue in possession should end with the service. It is enough if such occupation is convenient for the purposes of the service and was obtained by means of the contract of hiring."

In *People ex rel. Hubbard* v. *Annis*, 45 Barb. (N. Y.) 304, it appeared that defendant hired relator for one year for $270 to work on his farm and was to furnish him a house for himself and family, a garden and pasture for a cow. It was held that the contract was not a lease creating the relation of landlord and tenant; that the relation was simply that of employer and employee, or master and servant, and that the house, garden and pasture were parts merely of a contract of service and a part of the consideration for the agreement. In *Mead* v. *Owen*, 80 Vt. 273, 67 Atl. 722, an agreement was made for defendant to operate a farm on shares for a term of years, and as a part of the agreement to occupy a house on the farm. It was held that he was not a tenant. In *State* v. *Curtis*, 20 N. Car. 222, the same doctrine was applied in a case where a steward was furnished lodging in a house upon the employer's

estate. In another leading case, *Kerrains* v. *The People*, 60 N. Y. 221, in which it appeared that plaintiff in error worked for S in his mill at thirteen shillings per day, and was to have also use of a house on the mill property, the court held that the plaintiff in error (the employee) occupied as a servant and not as a tenant, and S, the owner, had legal possession. In *Heffelfinger* v. *Fulton*, 25 Ind. App. 33, plaintiff, a farm-hand, as a part of his contract with defendant for services, occupied a house, with garden and truck patches appurtenant thereto, and it was held that the relation of landlord and tenant did not exist.

The same doctrine is sustained in numerous cases presenting facts similar to the present case, among which are *Edgar* v. *Jewell*, 34 N. J. L. 259; *Haywood* v. *Miller*, 3 Hill (N. Y.) 90; *Davis* v. *Williams*, 130 Ala. 530, 30 So. 488; *Mead* v. *Pollock*, 99 Ill. App. 151, 156; *McQuade* v. *Emmons*, 38 N. J. L. 397; *School District* v. *Batsche*, 106 Mich. 330, 64 N. W. 196; *East Norway Lake Church* v. *Froislie*, 37 Minn. 447, 35 N. W. 260; *Mackenzie* v. *Minis*, 132 Ga. 323, 63 S. E. 900. The uniformity of decision throughout the country is decisive, and the English cases exhibit great unanimity to the same effect. So, also, the text-writers reach, from a consideration of the cases, the same conclusion. 1 Wood on Landlord & Tenant (2d Ed.) 75 *et seq.;* 1 Underhill on Landlord & Tenant, § 210 *et seq.;* Jones on Landlord & Tenant, § 20; 1 Taylor on Landlord & Tenant (8th Ed.) § 24; 1 Tiffany on Landlord & Tenant, § 48, p. 334; 16 R. C. L. pp. 579, 580, § 54; 24 Cyc. 880.

The allegations of the first paragraph clearly set forth a contract of hiring for $75 per month with the use of certain rooms in a house, and wood, water and milk necessary for his family as additional compensation. Its meaning is clear, and its purpose obvious, that is, to allege a relation of master and servant, and

not a tenancy. These allegations were admitted in the answer, and that admission carried with it all reasonable implications of fact and legal conclusions. The nature and character of the occupancy and use of the house and the right to have furnished the water, wood and milk, were fixed by the pleadings and no longer constituted an issue in the case. The jury should have been instructed as matter of law that there was no relation of landlord and tenant to be considered, and the issues for its consideration were only those arising out of the remaining allegations of the complaint, that is, whether the defendant exercised proper inspection and due care of the instrumentalities of which the intestate had the use, and whether the latter was to be charged by any conduct on his part with contributory negligence, and as to damages in case it found for the plaintiff.

The interpretation of this first paragraph was a question of law for the court. "The terms of the contract, so far as the parties differed, it was the duty of the jury to determine; but the terms being fixed, their legal import was for the court to declare." *Bowman* v. *Bradley*, 151 Pa. St. 351, 359, 24 Atl. 1062. "If the action is being tried in a court consisting of a judge and jury, it is unnecessary to submit to the jury the character of the occupation, if that depends upon the significance of substantially undisputed facts, and diverse inferences may not reasonably be drawn therefrom." 16 R. C. L. § 53, p. 579.

The allegations of the complaint in its first paragraph are admitted by the answer, the terms of the contract were thereby fixed, and there is nothing in the paragraph to suggest diverse inferences, or to permit the jury, as it was permitted and directed to do, to consider the character of the possession and use of the well, as distinguished from the other items of the contract

between the defendant and the intestate. If this point was to be made by defendant, it could only have been raised by proper pleading, and cannot come up by way of construction of this admitted paragraph as claimed by defendant, which in any event was a question for the court and not for the jury, and in fact was so plain as to need no effort in the way of construction by court or jury.

The plaintiff made certain other requests to charge in the line of his first request, which were refused and which it is not necessary to consider here, and also alleges error, and in most instances rightfully, in certain portions of the charge as given by the court, which need not be considered in detail in view of the initial error above considered, which runs through and invalidates many of the instructions. The gist of the instruction given by the court is contained in the extracts following: "As you will recall the testimony and claims of counsel, in substance the claims are here. First, that the plaintiff's decedent was a tenant of the defendant. This, and some of the circumstances attending that tenancy, is admitted by the pleadings, and so evidence to that effect has not been produced before you. But it is the extent, so far as the premises and privileges are concerned and the resulting duties on the part of the defendant as a result, which is the first issue presented here for your consideration. That is, logically, it seems to me in the consideration of this case, the first question for you to consider is what was the situation between this plaintiff's decedent and this defendant in their respective situations as tenant and landlord, and what were the resulting duties on the part of the landlord, if any, relating to the repair and maintenance of these premises and in particular, this well, around which the controversy centers. . . . And so, to repeat in somewhat more simple form what I have just been saying to you,

the general rule is that where a landlord rents to another the landlord's premises and there is a contract of letting between them, that the tenant takes a risk as to the condition and quality of the hired premises, and that the landlord is not liable to the tenant for injuries sustained by reason of the defective condition of the building leased. So that, as applied to this case, if the particular place, that is, the well at which this accident occurred, was or is found by you to have been a well which was a part of the premises occupied by the plaintiff's decedent, of which, under his contract with the defendant, he had the exclusive possession and control, and the landlord had no possession and control, it would make no difference as to what the repair or lack of repair of the well and its appurtenances was, the landlord would not be liable for them."

The court further charged the jury, in effect, that unless defendant had expressly contracted to keep this well in repair, or had by his contract with the intestate retained for his benefit and for the benefit of his other tenants or some other persons the privilege of taking water from this well, then he was under no duty to inspect, care for or repair the well. Proper instruction as to inspection and repair was given in case the defendant retained control.

So we see that in so far as the court construed the contract evidenced by the admitted first paragraph as creating the relation of landlord and tenant, it construed the same wrongly, and in so far as it left to the jury the question of the possession of the well it committed to them an issue not raised by the pleadings, and equally foreclosed thereby.

In sustaining the action of the court defendant says that it is perfectly true that the allegations of the first paragraph of the complaint were the facts, but claims that the admission of possession and use of the whole

Guiel *v.* Barnes.

farm by defendant had no bearing upon the relation of the parties as to that particular house and well, and that the facts admitted, that is, the right to use the house, water, milk and wood, do not preclude showing further facts characterizing the extent of the tenancy, and the exclusive right to use the well.

Counsel misconceive the application of the doctrine which we have discussed above, in making this claim. The application of the doctrine does not arise out of the general possession of an owner prior to making such a contract as the one under consideration, but arises out of the exact provisions of any given contract. And in the instant case the contract plead in the complaint did not contemplate any such change of possession as arises out of the creation of the relation of landlord and tenant. In using the word "tenancy" in any sense which would give force to their contentions, defendant's counsel beg the question. What the decedent got by the contract as compensation in part for his labor was the right to get water, not the tenancy of a well. He acquired just the same right of use of the well that provided the water, as he did of the cow that gave the milk and the woodlot from which his fuel was obtained, the possession in all cases was in the landlord. This position is made very clear in many of the cases above cited. When the defendant was allowed to give testimony specially bearing upon the control of the well, the court introduced, as we have said before, an issue not within the pleadings.

Defendant's counsel further claim in their brief that the case in the court below was tried by both parties upon the theory of the existence of the relation of landlord and tenant between the defendant and the decedent. It is fairly apparent that the defendant's counsel and the court did take that view. Counsel say in their brief that evidence regarding the claim of defendant

as to exclusive use of the well by the intestate was admitted without objection. Of course, the condition of the record is not such as to show the correctness or incorrectness of this assertion, and the plaintiff's requests to charge do not in any way reflect any claim based upon the effect of such testimony. If we may make use of a collocation of the claimed proofs on both sides as bearing upon this point, it does not appear that any of the facts alleged to have been proved as to the possession and use of the well could not have had a reasonable bearing upon the questions of negligence and contributory negligence, which were issues in the case. That a litigant allows evidence to come in at the trial of a cause, and offers contradictory evidence, does not deprive him of the benefit of facts admitted in the pleadings.

But defendant's counsel go further, and say that plaintiff's counsel were astute to the point of disingenuousness in concealing from opposing counsel the full extent and strength of their position. We can see nothing in the record to justify this claim. Certainly when, at the close of the case, plaintiff's counsel submitted to court and opposing counsel their requests to charge, the full emphasis and reliance in these requests upon the position which they now take, must have been evident, and it was not then too late to move for privilege to amend and introduce further evidence, by reason of surprise. On this point the observations of plaintiff's counsel in their brief—that since the plaintiff's intestate was dead, the proof of the exact terms of the contract might consist largely of his declarations, and that plaintiff had a right to assume, and did assume, that under the pleadings the allegations of paragraph one would be taken as true, and could not be and were not prepared with evidence bearing upon the exact arrangement made by decedent with the defendant—have force and pertinency.

Under the charge of the court there was committed to the jury an immaterial issue, not arising in the pleadings, which if found in favor of the defendant, as it may have been, was under the express instruction of the trial judge decisive of the case.

There is error and a new trial is ordered.

In this opinion the other judges concurred.