EILEEN CAHILL *v.* BOARD OF EDUCATION
OF THE CITY OF STAMFORD ET AL.
(12559)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued October 11—decision released December 31, 1985

*Eileen Cahill,* pro se, and *Davis W. Ganim,* with whom was *David J. Laudano,* for the appellant (plaintiff).

*Beverly J. Hodgson,* for the appellees (defendants).

ARTHUR H. HEALEY, J. This case, which involves the termination of a tenured teacher, was the subject of an earlier appeal to this court. *Cahill* v. *Board of Education,* 187 Conn. 94, 444 A.2d 907 (1982). The appeal presently before us challenges the trial court's, *Gerety, J.,* judgment in favor of the defendants which dismissed count three of the plaintiff's complaint for lack of subject matter jurisdiction.

In a jury trial in 1980 on counts one, two, and four of her complaint, the plaintiff received a general verdict awarding her damages of over $24,000, approximately equal to her salary for the 1970–71 school year plus interest. The trial court, *Zarrilli, J.,* accepted the jury's general verdict and denied the plaintiff's request for an injunction requiring the defendants to reinstate her in her teaching position. In the earlier appeal by the plaintiff, in which the defendants cross appealed, the trial court's decision was affirmed. *Cahill* v. *Board of Education,* supra.

The plaintiff was a former tenured science teacher employed by the Stamford board of education[1] before leaving on a sabbatical for the 1969–70 school year. Upon her return to the Stamford school system, the plaintiff and the defendants were unable to agree on a suitable teaching position. "Following protracted negotiations during the 1970–71 school year concerning her employment, the plaintiff filed suit in March 1971. . . . " *Cahill* v. *Board of Education,* supra, 96.

---

[1] The other defendant in this action is Joseph Porter, superintendent of schools in Stamford, who was sued only in his official capacity.

The action, as originally instituted in 1971, did not include the third count now before us, but that count was added thereafter by way of amendment in 1972. That action was later nonsuited in 1974 and the plaintiff instituted the present action in 1975. In June, 1971, the board provided the plaintiff with a notice of the proposed termination of her contract. In July, 1971, upon a request from the plaintiff's attorney, the board provided the plaintiff with a written statement of reasons for the proposed termination.[2] The board voted to terminate her employment on August 3, 1971. The plaintiff did not timely file a request for a hearing on the proposed termination and she did not file an appeal within thirty days of the board's final decision terminating her employment, as then provided in General Statutes § 10-151 (f).

After her 1971 action was nonsuited, the plaintiff filed a complaint in 1975 which contained four counts including the third count now before us. At the beginning of the plaintiff's trial in 1980, the trial judge, *Zarrilli, J.,* severed count three of the complaint and thus removed it from the jury's consideration. The plaintiff claims that count three alleges a cause of action

[2] The reasons cited by the acting superintendent, Stamford public schools, for the proposed termination of the plaintiff's contract were set forth in a letter dated July 19, 1971: "Miss Cahill is cited for incompetency on the basis of her demonstrated inability to convey the required educational material to students as evidenced by the extremely high percentage of failures and near failures in her classes. She has refused to accept guidance and direction from her immediate supervisor and the building principals with regard to student grading. She administers unauthorized and overly severe punishment for relatively minor infractions to students in her classes. There has been an unusually high number of parent complaints regarding Miss Cahill's teaching, grading and discipline practices. A general uncooperative attitude with administration has prevailed. Miss Cahill is cited for unethical conduct due to the fact that after having applied for a sabbatical leave to take science courses to improve her expertise as a teacher of science, she failed to do so. In fact she embarked upon the year of study and undertook a program in library work. This constitutes a moral and ethical misconduct and perhaps even fraud."

in libel and slander and the unlawful invocation of the tenure act, i.e., General Statutes § 10-151.[3]

On April 24, 1984, the defendants moved for summary judgment on count three which remained on the trial list after the 1980 verdict on the other three counts. The defendants claimed in that motion that the issues raised by count three "were fully litigated in the previous trial of the case and/or that count three does not state a cognizable cause of action." The motion for summary judgment was denied on May 18, 1984, by

---

[3] Count three of the plaintiff's 1975 complaint was as follows: "1. The defendant Stamford Board of Education is the duly constituted Board of Education for the City of Stamford and as such has the authority and duty to employ teachers for the school system of the City of Stamford pursuant to the Statutes made and provided.

"2. At all times herein mentioned, the defendant Joseph B. Porter was the Superintendent of Schools for the City of Stamford employed as such by the defendant Stamford Board of Education and was at all times acting for and on behalf of the defendant Stamford Board of Education.

"3. For more than seven years prior to September, 1970, the plaintiff, Eileen Cahill, had been employed by the defendant Stamford Board of Education as a high school teacher, and had attained tenure in the school system of the City of Stamford pursuant to Section 10-151 (b) of the Connecticut General Statutes, and was entitled to the protection and benefits of said Section 10-151 (b).

"4. At all relevant times, there existed between the defendant Stamford Board of Education and the Stamford Education Association a contract entitled 'Agreement Between the Stamford Board of Education and the Stamford Education Association 1968–1970' (hereinafter referred to as the 'Agreement of 1968–1970') covering the employment and working conditions of teachers employed by the defendant Stamford Board of Education, including the plaintiff.

"5. Pursuant to an agreement between the plaintiff and the defendant Stamford Board of Education, the plaintiff left her teaching duties for the 1969–1970 school year on a sabbatical leave of absence for purposes of study.

"6. Upon her return from her sabbatical leave of absence, the defendants refused to restore the plaintiff to her position as a high school biology teacher or to a position of like nature, seniority, status and pay.

"7. The 'Agreement of 1968–1970' between the defendant Stamford Board of Education and the Stamford Education Association provides in part:

'The applicant upon return from a Sabbatical Leave shall be restored to his position, or to a position of like nature, seniority, status, and pay, pro-

the trial court, *Berdon, J.,* and the memorandum of decision stated that the "third count is not barred under the doctrine of res judicata."

The plaintiff raises five issues on appeal. She alleges that the trial court erred: (1) in concluding that the defendants lawfully invoked General Statutes § 10-151; (2) in concluding that it was not bound by the statements of the memorandum of decision denying the motion for summary judgment; (3) in dismissing count three for lack of subject matter jurisdiction; and (4) in

---

vided that the employee remains eligible for reinstatement under other rules and regulations of the Board of Education.'

"8. The defendants' refusal to employ the plaintiff for the 1970–1971 school year constitutes a dismissal of the plaintiff without cause and is prohibited by Section 10-151 of the Connecticut General Statutes, as amended, and by the 'Agreement of 1968–1970.'

"9. Subsequent to the commencement of the law suit entitled *Cahill* vs. *Stamford Board of Education, et al,* (Superior Court for Fairfield County at Stamford, Docket Number 16544, transferred to Superior Court for Fairfield County at Bridgeport, Docket Number 142952), the defendants did in August, 1971, unlawfully invoke the provisions of Section 10-151 of the Connecticut General Statutes charging the plaintiff with, *inter alia,* 'incompetency,' 'moral and ethical misconduct,' and 'fraud.'

"10. The defendants' conduct in unlawfully invoking Section 10-151 of the Connecticut General Statutes subsequent to the commencement of the aforesaid action and prior to the resolution of the same and in charging the plaintiff as alleged was undertaken with the knowledge that the 'Agreement of 1968–1970' supersedes the Connecticut General Statutes and constitutes a willful and deliberate attempt to discredit the plaintiff and injure her reputation prior to the resolution of the aforesaid action.

"11. Whereas the defendants' breach of the 'Agreement of 1968–1970' and unlawful dismissal of the plaintiff as alleged in the First Count and Second Count deprived the plaintiff of her position as a tenured teacher in the school system of the City of Stamford, the defendants' conduct in unlawfully invoking Section 10-151 of the Connecticut General Statutes and in charging the plaintiff as alleged in paragraph 9 of the Third Count above has effectively prevented the plaintiff from anywhere pursuing her profession as a teacher and the plaintiff has been and remains unemployed since her return from her sabbatical leave of absence and the plaintiff's ability to earn a living as a teacher has been permanently and effectively destroyed.

"12. This action is commenced pursuant to Section 52-592 of the Connecticut General Statutes within one year from May 24, 1974."

failing to find that the plaintiff was not required to attend a hearing before the board because it was biased. The plaintiff, in her fifth issue, asks this court to consider whether the word "may" in General Statutes § 10-151 (b) (twenty-day period in which to request a hearing) can be directory and not mandatory despite the plaintiff's admitted failure to raise this issue at the trial level.[4] We find no error.

On June 8, 1984, the defendants filed a motion to dismiss[5] the third count of the plaintiff's complaint "because [the Superior] Court is without subject matter jurisdiction and the defendants are immune." After hearing the parties, the court, *Gerety, J.,* granted the motion for lack of subject matter jurisdiction. The trial court rejected the plaintiff's claim that General Statutes § 10-151 was improperly invoked by the defendants, pointing out that that statute sets out "the whole procedure concerning what is to be done when a teacher is notified that the Board of Education is considering a termination for cause." In granting the motion, the

---

[4] The plaintiff, in her brief, admits that this claim now made on appeal "is not the same as her claim at oral argument and in her briefs, the claim is so closely related with the issue of subject matter jurisdiction, upon which the Trial Court's decision is based, and upon which this Appeal is based, that the claim should be considered on appeal." She correctly points to Practice Book § 3063 which requires that claims be distinctly raised below and, admittedly, it was not. In addition, we have examined the transcript of the hearing before Judge Gerety, which contains some fifty-odd pages, and while a number of other claims were articulately and pointedly made by the plaintiff, this new claim was never made at all. The plaintiff now seeks, by this issue, to invoke a theory that was never raised and presented to the trial court, *Gerety, J.* See *Fuessenich* v. *DiNardo,* 195 Conn. 144, 151, 487 A.2d 514 (1985); *Helbig* v. *Zoning Commission,* 185 Conn. 294, 319, 440 A.2d 940 (1981). We do not address this claim.

[5] The motion, which was captioned "Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Defendant's Immunity," recited: "The defendants in the above-captioned case move that the Court dismiss plaintiff's Complaint, more particularly Count III, because this Court is without subject matter jurisdiction and the defendants are immune from suit."

court discussed the plaintiff's claimed failure to exhaust her administrative remedies under General Statutes § 10-151, stating that "[o]n that ground alone, failure to exhaust the administrative remedy which was available under the third count and not followed, the court believes that judgment ought to enter in favor of the defendants. . . . " It went on to state that "more important, the procedure is a statutory one and unless it is followed there is no appeal from it to the court. If that procedure is not followed and there is no right to proceed to the courts, then the court lacks jurisdiction over the subject matter of the proceeding." It thereupon concluded that the court lacked jurisdiction to proceed on the third count.

The third count has been referred to by the plaintiff as one setting forth not only a cause of action based on the unlawful invocation of the tenure law; General Statutes § 10-151; by the defendants but also as one sounding in libel and slander. The defendants assert that the third count cannot be characterized as one alleging either libel or slander, but rather is really an attempt to appeal her termination as a teacher after she failed to take timely advantage of the statutory proceedings in § 10-151.

At the hearing on the motion to dismiss, the plaintiff said: "The question before this Court in Count Three is whether or not the defendants had the right to invoke the tenure law [General Statutes § 10-151]."[6]

---

[6] On May 14, 1984, a hearing was held before Judge Berdon, on the defendants' motion for summary judgment as to the third count of the plaintiff's complaint.

In that hearing, the plaintiff told the court: "Your Honor, the issue isn't whether [General Statutes § 10-151] was applicable or not, it is whether or not it could lawfully be invoked given the facts in this case." The court denied the defendant's motion.

In oral argument before us, the plaintiff herself argued that she relies heavily on the disposition of that motion, claiming that the issue of whether or not the defendants could lawfully invoke the tenure act in 1971 in this

The gravamen of her claims on appeal flows from this position. She claims that this issue presents a factual question for a jury and not one of law for the court.

The thrust of the plaintiff's unlawful invocation claims implicates her sparsely briefed characterization of the third count[7] as sounding in libel and slander. In any event, "[t]he interpretation of pleadings is always a question of law for the court [*Guiel* v. *Barnes,* 100 Conn. 737, 743, 125 A. 91 (1924)]. . . ." *Hendrie* v. *Hendrie,* 7 Conn. Sup. 186, 190 (1939). We have pointed out that "[t]he burden [is] upon the pleaders to make such averments that the material facts should appear with reasonable certainty; and for that purpose [the pleaders] were allowed to use their own language. Whenever that language fails to define *clearly* the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice *between the parties. Price* v. *Bouteiller,* 79 Conn. 255, 64 Atl. 227 [1906]. *But* essential allegations may not be supplied by conjecture or remote implication. [Id.]" (Emphasis added.) *Preleski* v. *Farganiasz,* 97 Conn. 345, 348, 116 A. 593 (1922). Examination of the allegations of the third count discloses that it does not include allegations essential to a cause

case presented a question of fact for a jury to pass upon and not a question of law. If it is assumed arguendo that this claim was valid, it was hardly binding on Judge Gerety when he passed upon the motion to dismiss and was met with a claim of lack of subject matter jurisdiction, an issue not passed upon by Judge Berdon.

[7] This may perhaps be due in part to the fact that the memorandum of decision of the trial court, *Gerety, J.,* does not refer at all to libel and or slander. The question of the characterization of the third count as sounding in libel and slander was discussed in the hearing before Judge Gerety. Moreover, there is no indication in the record that any further articulation of that memorandum was ever sought. See Practice Book §§ 3060B, 3082; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 222 n.5, 435 A.2d 24 (1980).

of action in either libel or slander. See, e.g., *Strada* v. *Connecticut Newspapers, Inc.*, 193 Conn. 313, 477 A.2d 1005 (1984); *Charles Parker Co.* v. *Silver City Crystal Co.*, 142 Conn. 605, 116 A.2d 440 (1955); *Hassett* v. *Carroll*, 85 Conn. 23, 81 A. 1013 (1911); see also *Barry* v. *McCollom*, 81 Conn. 293, 70 A. 1035 (1908); annot., 40 A.L.R.3d 490. Asserting that this count does sound in libel or slander, the plaintiff refers to such a characterization by the court, *Zarrilli, J.*, at the 1980 jury trial as well as to a later such characterization by the court, *Berdon, J.*, in passing upon the defendants' motion for summary judgment.

At the hearing before Judge Gerety, the plaintiff reminded him that Judge Zarrilli had refused to let the third count go to the jury.[8] The judge expressed his agreement with that ruling even though he was not bound thereby. See generally *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982); *Levay* v. *Levay*, 137 Conn. 92, 96, 75 A.2d 400 (1950). Another judge, *Berdon, J.*, in denying the defendants' motion for summary judgment, had indicated that the allegations of the third count "raise the issues of libel and slander and the defendants' invocation of the statute (§ 10-151 [b]) for dismissal for cause for the ulterior pur-

---

[8] When this case was originally tried to the jury in 1980, the court, *Zarrilli, J.*, submitted three counts of the complaint to the jury but did not submit the third count. In doing so, that court said: "The Court: The third count is to be separated from the complaint. That's the count relating to defamation and libel. I don't feel that this count should be included in this case. So, I will separate that issue from this case. Your objection is overruled, exception is noted.

"Ms. Cahill: Your Honor, separating that issue from this case denies me a fair trial.

"The Court: Objection is overruled. Exception is noted.

"Ms. Cahill: Exception."

We note that on the plaintiff's first appeal in this case, one of the issues set out in her "Preliminary Statement of Issues" was "Did the Court err in prohibiting the Plaintiff from proceeding on the Third Count of the Complaint?"

pose of injuring her professional reputation."[9] Judge Berdon, in considering the two grounds on which summary judgment was sought, concluded that the plaintiff had a constitutional right to have "these issues decided by a jury." Judge Berdon did not have before him under that motion and, therefore, did not pass upon a claim of either subject matter jurisdiction or the attendant claim of failure to exhaust an administrative remedy. Both of these grounds, however, were later addressed by Judge Gerety who also was not bound by the decision of Judge Berdon. In any event, jurisdiction of the subject matter is a question of law and cannot be waived or conferred by consent either in the trial court or here. Practice Book §§ 143, 145; *Circle Lanes of Fairfield, Inc.* v. *Fay,* 195 Conn. 534, 540, 489 A.2d 363 (1985); *Neyland* v. *Board of Education,* 195 Conn. 174, 177, 487 A.2d 181 (1985); *Reed* v. *Reincke,* 155 Conn. 591, 598, 236 A.2d 909 (1967). Once brought to the attention of the court, regardless of the form of the motion, it must be acted upon. *East Side Civic Assn.* v. *Planning & Zoning Commission,* 161 Conn. 558, 559, 290 A.2d 348 (1971); *Carten* v. *Carten,* 153 Conn. 603, 610, 219 A.2d 711 (1966). Moreover, " 'whenever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to previous rulings.' " *Chzrislonk* v. *New York, N.H. & H. R. Co.,* 101 Conn. 356, 358, 125 A. 874 (1924).

It is evident that Judge Gerety dismissed this case for lack of subject matter jurisdiction. He pointed out that the plaintiff's remedy under the third count was statutory, i.e., General Statutes § 10-151. In determining that the defendant board properly invoked this statute in 1971, despite the plaintiff's refusal to appear before it in 1971, the court, *Gerety, J.,* stressed that

---

[9] On at least three occasions before the court, *Berdon, J.,* the plaintiff claimed that count three of her complaint contained the allegations of the unlawful invocation of the tenure act in 1971 and libel and slander.

adhering to this statutory scheme for termination for cause is a precondition, under the doctrine of exhaustion of administrative remedies, to seeking relief in the courts. Because the statutory remedy was not pursued, the court stated that this alone justified dismissal and because that precondition was not met, the court lacked subject matter jurisdiction. We agree.

The third count of the complaint is in twelve paragraphs. Nine of those twelve paragraphs incorporate by reference allegations of earlier counts in the complaint.[10] The remaining three paragraphs allege the unlawful invocation of the tenure act by the defendants, the charges made in so doing, as well as the defendants' motivation and the harm alleged to have been incurred by the plaintiff as a result of the unlawful invocation. The trial court, *Gerety, J.,* reasonably construed the third count to allege an unlawful invocation of the tenure act and concluded correctly that the tenure act had been properly invoked and, therefore, that the court lacked subject matter jurisdiction.

The plaintiff argues that the unlawful invocation was not only in an untimely fashion but that it also arose out of ulterior motives, including the defendants' desire to limit any damages that she might recover against them by the lawsuit she had already instituted. Under those circumstances, it would have been useless, she claims, to appear before the defendant board of education at this time because of its bias.

---

[10] The twelfth paragraph of the third count incorporates an allegation that appears in both the first and second counts of the complaint which itself is dated August 15, 1975. That paragraph alleges that the action "is commenced pursuant to General Statutes Section 52-592 of the Connecticut General Statutes within one year from May 24, 1974." That statute, sometimes referred to as "the accidental failure of suit" statute, permits a new action to be instituted within its time limitations.

The plaintiff's earlier action instituted in 1971 was nonsuited and in 1975 she instituted a new action. See *Cahill* v. *Board of Education,* 187 Conn. 94, 96, 444 A.2d 907 (1982).

It is apparent from the record that in 1971 the plaintiff's then counsel and the defendants had been discussing her placement in the Stamford school system for the school year 1971–72. This was prior to the defendant board's June 28, 1971 letter to her counsel stating that it was considering terminating the plaintiff's employment. This letter was forwarded after "protracted negotiations during the 1970–71 school year concerning her employment . . ."; *Cahill* v. *Board of Education,* supra, 96; which arose out of a dispute as to her assignment upon return from her sabbatical leave for the 1969–70 school year.

"A teacher who is given by statute the right to continued employment except upon a showing of cause or the bona fide elimination of his position; see General Statutes § 10-151 (b); acquires a property right that is entitled to protection under the due process clause." *Lee* v. *Board of Education,* 181 Conn. 69, 72, 434 A.2d 333 (1980); *Petrovich* v. *Board of Education,* 189 Conn. 585, 589, 457 A.2d 315 (1983). Section 10-151 accords the plaintiff the constitutionally required procedural protections, although she failed to take advantage of the opportunity afforded her by those protections. The defendant board, utilizing the procedural statutory means for termination, followed the statute as required in order to effect a legal termination of her services. See, e.g., *Lee* v. *Board of Education,* supra, 72–73, 79; see also 2A Antieau, Municipal Corporation Law § 22.186.

The plaintiff argues that because the defendant board invoked the statute when it did, it was improper to do so. We do not agree. Even if the statute was invoked to limit any potential damages that might result from the plaintiff's lawsuit, the argument is not persuasive. It was proper to invoke the statute when the defendants did so in this case. This claim completely overlooks the significant circumstance that the defendants, in

order legally to terminate her employment, were required to invoke the carefully crafted statutory scheme prescribed by General Statutes § 10-151 even though it arguably could have been invoked earlier. That it was not can fairly be said to have been due, on this record, to the "protracted negotiations during the 1970–71 school year concerning her employment" that we noted in the plaintiff's earlier case. See *Cahill* v. *Board of Education,* supra.

In addition, the plaintiff's claim that it would have been "useless" to appear before the defendant board once the tenure act had been invoked cannot be accepted. She asserts that the defendants were biased against her and, therefore, she contends that there was no need to exhaust the administrative remedy provided by the tenure act. This court has "grudgingly carved several exceptions" from the exhaustion doctrine; *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority,* 188 Conn. 90, 94, 448 A.2d 210 (1982); including one where the administrative remedy is "inadequate or futile." *Greenwich* v. *Liquor Control Commission,* 191 Conn. 528, 542, 469 A.2d 382 (1983); *Aaron* v. *Conservation Commission,* 178 Conn. 173, 179, 422 A.2d 290 (1979). We recognize that when a board of education is considering termination of a tenured teacher's employment and indicates such an intention by invoking the statutory procedure in § 10-151, such an action carries with it a suggestion of the teacher's unsuitability, depending on the statutory grounds given. This consideration, nevertheless, does not constitute a valid reason for bypassing the statutory procedure available and the protections offered therein to the teacher involved. The place to make the claim of bias and to make a record on the claim of bias was before the defendant board. The plaintiff cannot be allowed to bypass that board and seek relief in court in the first instance. By not appearing before the board,

the plaintiff not only deprived the defendant board of the opportunity to hear, analyze and review a matter within its responsibility and expertise, but also deprived herself of the opportunity to put on her case and to make a proper record on which to seek judicial relief in the event she was terminated. "The primary purpose of the [exhaustion] doctrine is to avoid premature interruption of the administrative process. . . . [It] allows the agency to use its expertise and discretion, to correct its own error. . . ." *First Jersey Securities, Inc.* v. *S.E.C.,* 553 F. Sup. 205, 208 (D.N.J. 1982); see *First Jersey Securities, Inc.* v. *Bergen,* 605 F.2d 690, 695 (3d Cir. 1979), cert. denied, 444 U.S. 1074, 100 S. Ct. 1020, 62 L. Ed. 2d 756 (1980). The doctrine of exhaustion "furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review." *Watergate II Apartments* v. *Buffalo Sewer Authority,* 46 N.Y.2d 52, 57, 385 N.E.2d 560, 412 N.Y.S.2d 821 (1978). As a practical matter, an allegation of bias is usually controverted. A mere claim of probable bias of a hearing officer has been held insufficient to avoid an exhaustion requirement. See *Christensen* v. *Iowa Civil Rights Commission,* 292 N.W.2d 429, 431 (Iowa 1980), citing *First Jersey Securities, Inc.* v. *Bergen,* supra.

A member of a board of education is a public officer. *Maitland* v. *Thompson,* 129 Conn. 186, 191, 27 A.2d 160 (1942); *Keegan* v. *Thompson,* 103 Conn. 418, 420, 130 A. 707 (1925). There is a presumption that a public officer properly performs his duty unless the contrary appears. *Rompe* v. *King,* 185 Conn. 426, 431, 441 A.2d 114 (1981); *Parham* v. *Warden,* 172 Conn. 126, 134, 374 A.2d 137 (1976). If this presumption was to have been challenged, the plaintiff should have used the forum available to her for the making of a record—

that of timely appearing before the defendants in 1971. Unfortunately, the plaintiff did not do so. In any event, had she done so and had that decision been adverse to her, she then would have had the right to appeal on a proper record for judicial relief under the tenure statute. General Statutes § 10-151 (f); *Delagorges* v. *Board of Education,* 176 Conn. 630, 633, 410 A.2d 461 (1979); *Miller* v. *Board of Education,* 166 Conn. 189, 193, 348 A.2d 584 (1974). In any event, we are not persuaded that the plaintiff has demonstrated that availing herself of the available administrative remedy would have been, in this case, useless. See *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 485 A.2d 1272 (1984); *Greenwich* v. *Liquor Control Commission,* supra; *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority,* supra. We have acknowledged "that a strong justification may exist for creating an exception to requiring submission to the administrative process." *Greenwich* v. *Liquor Control Commission,* supra, 542; *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.,* 178 Conn. 586, 591, 424 A.2d 285 (1979). That justification is not present here. Accordingly, the trial court, *Gerety, J.,* correctly determined that the plaintiff failed to exhaust the available administrative remedy and, as a result, correctly concluded that it lacked subject matter jurisdiction over the third count.

There is no error.

In this opinion the other judges concurred.

