RUSSELL GEREN *v.* BOARD OF EDUCATION OF THE TOWN OF BROOKFIELD ET AL.
(11858)

LANDAU, SCHALLER and FREEDMAN, Js.

Argued September 19—decision released December 6, 1994

*William M. Laviano,* for the appellant (plaintiff).

*Robert J. Murphy,* with whom, on the brief, was *Catherine M. Thompson,* for the appellees (defendants).

LANDAU, J. The plaintiff, Russell Geren, appeals from the judgment of the trial court rendered on a jury ver-

dict in favor of the defendants, the Brookfield board of education and Michael Perrone. Geren claims that the trial court improperly (1) commented on the evidence in its charge to the jury, (2) failed to create an appropriate record of the trial proceedings, (3) failed to charge the jury regarding his liberty interest claim, (4) denied counsel access to the courtroom during part of the trial proceedings, (5) found that he was not entitled to a hearing pursuant to General Statutes § 10-151[1] to determine the issue of the voluntariness

[1] General Statutes § 10-151 provides in pertinent part: "(d) The contract of employment of a teacher who has attained tenure shall be continued from school year to school year, except that it may be terminated at any time for one or more of the following reasons: (1) Inefficiency or incompetence; (2) insubordination against reasonable rules of the board of education; (3) moral misconduct; (4) disability, as shown by competent medical evidence; (5) elimination of the position to which the teacher was appointed or loss of a position to another teacher, if no other position exists to which such teacher may be appointed if qualified, provided such teacher, if qualified, shall be appointed to a position held by a teacher who has not attained tenure, and provided further that determination of the individual contract or contracts of employment to be terminated shall be made in accordance with either (A) a provision for a layoff procedure agreed upon by the board of education and the exclusive employees' representative organization or (B) in the absence of such agreement, a written policy of the board of education; or (6) other due and sufficient cause. . . . Within twenty days after receipt of written notice by the board of education that contract termination is under consideration, such teacher may file with such board a written request for a hearing. . . . Such hearing shall commence within fifteen days after receipt of such request, unless the parties mutually agree to an extension, (A) before the board of education or a subcommittee of the board, (B) if indicated in such request or if designated by the board before an impartial hearing panel or, (C) if the parties mutually agree, before a single impartial hearing officer chosen by both parties. . . . Within ninety days after receipt of the request for a hearing, the impartial hearing panel, subcommittee of the board or hearing officer, unless the parties mutually agree to an extension, shall submit written findings and a recommendation to the board of education as to the disposition of the charges against the teacher, and shall send a copy of such findings and recommendation to the teacher. The board of education shall give the teacher concerned its written decision within fifteen days of receipt of the written recommendation of the impartial hearing panel, subcommittee or hearing officer. . . . The hearing shall be public if the teacher so requests or the board, panel or sub-

of his resignation, and (6) refused to admit testimony concerning employee rules and written board policies. We affirm the judgment.

The jury reasonably could have found the following facts. Geren was a tenured high school teacher employed by the Brookfield board of education. During the fall of 1987, he handed a series of flirtatious notes and a birthday card to a sixteen year old female student. Upon receiving the last note, the student showed Geren's correspondence to her parents, who contacted the school principal. After the principal ordered Geren to have no contact with the student pending completion of the investigation, Geren approached her and inquired why she had reported him. A defendant Michael Perrone, the superintendent of the school, was apprised of the situation and ordered Geren suspended with pay pending resolution of the matter.

Shortly thereafter, Perrone met with Geren to discuss the student's allegations. Geren contended that he could not recall writing the notes because at the time of the correspondence he had been under extreme stress as a result of the stock market crash of October, 1987. Perrone discussed the seriousness of the matter, suggested that Geren resign, and indicated that he would seek Geren's termination in the absence of a resignation.

On December 16, 1987, the board of education voted to consider the termination of Geren's contract of employment pursuant to General Statutes § 10-151, the

committee so designates. The teacher concerned shall have the right to appear with counsel at the hearing, whether public or private. . . . Nothing herein contained shall deprive a board of education of the power to suspend a teacher from duty immediately when serious misconduct is charged without prejudice to the rights of the teacher as otherwise provided in this section."

Teacher Tenure Act. Subsequently, Geren agreed to resign in exchange for his being placed on leave with pay for one year and receiving $3500 in "job location" assistance. On December 21, 1987, the board accepted Geren's resignation, effective December 31, 1988.

In August, 1988, Geren wrote to the board of education, revoking his resignation on the ground that it had been induced by pressure from the defendants while he was afflicted with depression and stress. Perrone refused to accept the revocation. Thereafter, Geren filed a writ of summons and revised complaint alleging that the defendants' failure to hold a hearing to determine the voluntariness of his resignation deprived him of a "property and liberty interest" without procedural due process and breached his employment contract. After a verdict and judgment for the defendants on both counts, this appeal followed.

I

Geren first claims that the trial court improperly commented on the evidence in its charge to the jury regarding the issue of whether he was capable of making an intelligent, knowing, and voluntary resignation. The effect of the comments, Geren asserts, was that the trial court usurped the fact-finding function of the jury.

At trial, Geren introduced and the court admitted a medical report addressed to his psychiatric condition. In it, Arthur Africano, a psychiatrist, diagnosed Geren as having an "adjustment disorder" and an "obsessive-compulsive personality." Africano, who did not testify, drew no conclusions in the report as to whether these conditions had a bearing on Geren's ability to resign voluntarily. He expressed no causal connection between the diagnosis and Geren's act of resignation.

Geren now objects to the following portions of the trial court's charge: (1) "The case is silent with respect

to any professional testimony about the impact of these manifestations upon his ability to make a knowing, voluntary and intelligent decision with regard to his resignation"; (2) "The manifestations, Geren's categorizations and Africano's diagnosis fall far short medically of establishing any inability to reach a knowing, voluntary and intelligent choice or decision or judgment on the alternatives available to him"; and (3) "You certainly can consider his mental status. He described it to you, but you must also remember there's no professional evidence that says he could not make a free choice . . . ."

"In reviewing a challenge to jury instructions, we must examine the charge in its entirety." *Felsted* v. *Kimberly Auto Services, Inc.,* 25 Conn. App. 665, 668, 596 A.2d 14, cert. denied, 220 Conn. 922, 597 A.2d 342 (1991). "While the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury." (Internal quotation marks omitted.) Id., quoting *Preston* v. *Keith,* 217 Conn. 12, 17, 584 A.2d 439 (1991).

The matter of commenting on evidence rests within the discretion of the trial court and impropriety will be found only where that discretion has been abused. *Heslin* v. *Malone,* 116 Conn. 471, 477–78, 165 A. 594 (1933); *Felsted* v. *Kimberly Auto Services, Inc.,* supra, 25 Conn. App. 669. It is not only the right, but often the duty of the trial court to comment on the evidence. *Felsted* v. *Kimberly Auto Services, Inc.,* supra, 669. Accordingly, it is sometimes proper for the court to remark on the absence of particular evidence; see id., 670; and "[i]t is no objection to such comments that they will tend to uncover the weakness of a weak case . . . ." (Internal quotation marks omitted.) *Heslin* v. *Malone,* supra, 477. The trial court's discretion in this matter is tempered only by the mandate that its com-

ments be reasonable and fair and not misstate facts or evidence. Id. "The nature and extent of such comment must largely depend upon the facts involved in the particular case and the manner in which it has been tried." Id., 478.

In this case, the trial court pointed out to the jury that Geren had presented no direct medical evidence proving that he was incapable of voluntarily resigning. Rather, Geren offered a medical report and other evidence from which that inference might be drawn. In highlighting this distinction, the trial court did not remove from the jury the question of whether Geren voluntarily resigned. A review of the record and the entire charge confirms that the trial court did not abuse its discretion in this case.

II

Geren next claims that the trial court failed to create a proper record of the proceedings. He complains that the court maintained no record of the portion of testimony that was read back to the jury in response to a particular inquiry from the jury.

"If a claim on appeal is nonconstitutional in nature, the burden of establishing that the error was harmful is on the appellant." *State* v. *Williams,* 231 Conn. 235, 250, 645 A.2d 999 (1994); *State* v. *Truppi,* 182 Conn. 449, 465, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981). For this reason, bare assertions of error, devoid of analysis, are insufficient to warrant appellant review. *Gaudio* v. *Gaudio,* 23 Conn. App. 287, 311, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.22d 471 (1990); *State* v. *Franklin,* 20 Conn. App. 96, 99, 563 A.2d 1383 (1989).

Here, Geren asserts that the court's failure to maintain the missing portion of testimony constitutes prejudicial error. He does not define, however, which portion

is missing, nor what issue he would have raised were the transcript available. He also does not analyze the specific harm resulting from his inability to raise that issue. Accordingly, we decline to review this claim because it has been inadequately briefed. Practice Book § 4065; *State* v. *Yopp,* 35 Conn. App. 740, 750, 646 A.2d 298 (1994).

## III

Geren next asserts that the trial court improperly failed to charge the jury on his claim that the defendants' actions deprived him of a constitutionally protected liberty interest. Geren argues that he pleaded all of the facts necessary to sustain a liberty interest claim under the fourteenth amendment to the United States constitution, and that the trial court was therefore obligated to charge the jury on such a claim. In its memorandum of decision dated October 13, 1992,[2] the trial court stated that its decision not to charge was based on Geren's failure to set forth in his complaint allegations sufficient to raise a liberty interest claim.

"It is axiomatic that the parties are bound by their pleadings." *Calabro* v. *Calabro,* 33 Conn. App. 842, 847, 639 A.2d 1046 (1994). Consequently, "[c]laims of error addressed to the charge are tested by the pleadings and by the evidence relevant to the claimed error as presented in narrative form (with appropriate reference to pages of the transcript) in the parties' briefs." *Tierney* v. *American Urban Corp.,* 170 Conn. 243, 250, 365 A.2d 1153 (1976). The trial court "should submit to the jury all issues as outlined by the pleadings and rea-

---

[2] The trial court filed this memorandum of decision in response to three postverdict motions filed by Geren, in which he moved to set aside the verdict, for judgment non obstante veredicto, and for a directed verdict. In those motions, Geren made the same claim that he now asserts on appeal, namely, that the trial court improperly failed to charge the jury on his liberty interest claim.

sonably supported by the evidence." *Calabro* v. *Calabro,* supra, 847; see also *Goodmaster* v. *Houser,* 225 Conn. 637, 648, 625 A.2d 1366 (1993). Conversely, "[t]he court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding." *Calabro* v. *Calabro,* supra, 847, quoting *Batick* v. *Seymour,* 186 Conn. 632, 641, 443 A.2d 471 (1982).

"[T]he interpretation of pleadings is always a question of law for the court . . . ." (Citations omitted.) *Cahill* v. *Board of Education,* 198 Conn. 229, 236, 502 A.2d 410 (1985). Thus, in order to evaluate the trial court's decision not to charge the jury on a liberty interest claim, we must first decide whether its conclusion that the allegations in Geren's complaint failed to plead such a claim was "legally and logically correct." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

The gist of Geren's liberty interest claim is that, in the absence of a presuspension or postsuspension hearing at which he might explain his actions, he will be subject to "ridicule and stigmatization" and his standing in the community will be denigrated. In the context of public employment, an interest in one's "good name, reputation, honor, or integrity" is included within the constitutional protection of liberty. See *Paul* v. *Davis,* 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976); *Board of Regents* v. *Roth,* 408 U.S. 564, 573, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Wisconsin* v. *Constantineau,* 400 U.S. 433, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971). Thus, when a public employer suspends or terminates an employee in a manner "that might seriously damage his standing and associations in the community" or might impose on him "a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities," a liberty

interest under the due process clause is impaired. *Board of Regents* v. *Roth,* supra, 573.

An essential element of a liberty interest claim is an allegation by the complainant that "the employer create[d] and disseminate[d] a false and defamatory impression about the employee in connection with his termination . . . ." *Codd* v. *Velger,* 429 U.S. 624, 628, 97 S. Ct. 882, 51 L. Ed. 2d 92 (1977). This element is necessary because "the remedy mandated by the Due Process Clause of the Fourteenth Amendment is an opportunity to refute the charge. . . . The purpose of such notice and hearing is to provide the person an opportunity to clear his name. . . . [I]f the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation." (Citations omitted; internal quotation marks omitted.) Id., 627. The absence, therefore, of any allegation of a falsehood propagated by the employer is fatal to an employee's liberty interest claim. Id.; see also *Statewide Grievance Committee* v. *Presnick,* 215 Conn. 162, 170, 575 A.2d 210 (1990).

In this case, Geren's complaint is devoid of any allegation that the defendants generated a false and defamatory impression about him in connection with his suspension or resignation. In his complaint, Geren states that "he will be subject to embarrassment, humiliation and public disgrace," but fails to make any claim that such disgrace is a result of any action by the defendants. He fails to assert a causal connection between the defendants' actions in the suspension process and the damage to his reputation. As a result, he did not properly plead a liberty interest claim under the due process clause of the fourteenth amendment.[3]

[3] Moreover, Geren never denied the reasons for his suspension; that is, he never denied that he sent the notes to the student. What he seeks in

## The trial court's decision not to submit Geren's insufficient liberty interest claim to the jury was legally and logically correct.[4]

the way of due process, then, is an opportunity to explain or justify his conduct, not to refute the charges against him. In the public employment context, however, the due process clause affords a hearing "to provide the [employee] an opportunity to clear his name. If he does not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result for him." *Codd* v. *Velger,* supra, 429 U.S. 627.

[4] Geren also relies on *Tedesco* v. *Stamford,* 215 Conn. 450, 576 A.2d 1273 (1990), on remand, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd, 222 Conn. 233, 610 A.2d 574 (1992), asserting that the case stands for the proposition that "hyper-technical pleading requirements will not defeat a constitutional claim, absent surprise to the defendant." Geren's analysis of this case, however, is inaccurate. In *Tedesco,* the defendant appealed from a judgment for the plaintiff, claiming that the trial court improperly concluded that the plaintiff's complaint stated a cause of action. Despite the fact that the complaint was in fact missing a necessary allegation, the cause of action was contested on its merits and a judgment was rendered thereon. On appeal, the plaintiff asserted that the defendant had not objected at trial to the introduction of evidence at variance with the cause of action, and was not prejudiced or misled by the admission of such evidence.

The Supreme Court held that the absence of a requisite allegation in a complaint that results in the failure to state a cause of action "is not a sufficient basis for vacating a judgment unless the pleading defect has resulted in prejudice [to the defendant]." Id., 457. Although parties are bound by their pleadings, "if [they] will insist on going to trial on issues framed in a slovenly manner, they must abide the verdict; judgment will not be arrested for faults in statement when facts sufficient to support the judgment have been substantially put in issue and found. . . . Want of precision in alleging the cause of an injury for which an action is brought, is waived by contesting the case upon its merits without questioning such defect." (Citation omitted; internal quotation marks omitted.) Id. The court further noted that "[i]f the defendant had timely objected to the evidence introduced at trial [that varied from the pleadings], the plaintiff might have been permitted to amend his complaint and any prejudice could have been cured by a request for a continuance. 'Where a case has been litigated wholly upon the merits a party is not permitted after judgment to take advantage of defects in procedure which, had attention been called to them at the trial, could readily have been amended.' " Id., 462.

It is important to note that in *Tedesco,* it was the defendant challenging the sufficiency of the plaintiff's cause of action after judgment without ever having challenged the variance between pleadings and proof at trial. Here, Geren failed to plead a liberty interest cause of action. When he attempted

## IV

Geren's fourth claim is that the trial court improperly conferred with the clerk and stenographer outside of the presence of the jury, litigants, and counsel for the purpose of reviewing what testimony would be read back in response to a jury request. Geren claims that this private conference deprived him of his right to a public trial by an impartial jury as guaranteed by article first, § 8, of the Connecticut constitution.[5] We disagree.

On May 1, 1992, during its deliberations, the jury requested to rehear certain testimony. After a lunch recess, the trial court met with the clerk and stenographer in the locked courtroom, off the record, to review which testimony would be read back to the jury in response to its request. After reviewing the stenographer's notes, the judge opened the courtroom to the litigants and jury and continued the proceedings.

A threshold question is whether Geren is correct in his assertion that his claim is of constitutional magnitude. He relies on *Ostolaza* v. *Warden,* 26 Conn. App. 758, 603 A.2d 768, cert. denied, 222 Conn. 906, 608

---

to offer evidence supporting such a claim, the defendants successfully objected to the introduction of such proof. Geren never requested permission to amend his complaint, nor did he opt to begin his case anew. No judgment was rendered on a liberty interest cause of action. Geren cannot now rely on *Tedesco* to "cure [his] pleading defects." We conclude that *Tedesco* is inapposite to the circumstances of this case.

[5] Article first, § 8, of the Connecticut constitution provides in pertinent part: "In all criminal prosecutions, the accused shall have a right to . . . [a] public trial by an impartial jury. . . ."

Geren also asserts that the trial court's actions deprived him of "effective assistance of counsel." This claim, however, is unsupported by analysis or legal authority. As noted above, bare assertions of error, devoid of analysis, are insufficient to warrant appellant review. *Gaudio* v. *Gaudio,* supra, 23 Conn. App. 311; *State* v. *Franklin,* supra, 20 Conn. App. 99. We therefore deem this claim to be abandoned.

A.2d 692 (1992), to support his contention that the trial court's private conference deprived him of a constitutional right to a public trial. In that case, in a discussion regarding whether the trial court was justified in closing the courtroom during a certain witness' testimony, the reviewing court reiterated that a compelling need must exist to exclude the public and press from a criminal trial. Id., 770–71.

*Ostolaza* and the constitutional right to a public trial concern the authority of the trial court to close the courtroom during trial proceedings. In the case at hand, the trial court did not close any trial proceeding. Rather, the judge excluded everyone from an administrative conference with his staff. Geren "has placed a constitutional tag on a nonconstitutional issue. *State v. Smith,* 219 Conn. 160, 165, 592 A.2d 382 (1991) . . . ." (Citations omitted.) *State v. Harvey,* 27 Conn. App. 171, 183, 605 A.2d 563 (1992).

" 'What portions of the record, if any, will be submitted to the jury for their consideration is a matter of sound judicial discretion.' " *State v. Harris,* 227 Conn. 751, 770–71, 631 A.2d 309 (1993); *State v. Smith,* 35 Conn. App. 51, 67, 644 A.2d 923 (1994). Geren asserts that counsel should have been given an opportunity to participate in the decision concerning what testimony would be read back to the jury so that no relevant portions were omitted. That decision, however, rests within the discretion of the trial court, not the parties or their counsel. Geren cites no authority, and we find none, for the proposition that the trial court may not confer in private with its staff on administrative matters. For these reasons, we find no abuse of discretion in the trial court's decision to confer in private with the stenographer and clerk for the purpose of reviewing which portions of testimony would be resubmitted to the jury.

## V

Geren next claims that the trial court improperly denied his motion for a directed verdict. He argues that, because the exclusive forum for the decision regarding whether his resignation was voluntary was an administrative hearing pursuant to General Statutes § 10-151,[6] it was improper for the issue to be submitted to the jury.[7] Consequently, Geren contends that the trial court should have granted a directed verdict on the first count of his complaint and ordered an administrative hearing to be held. We are unpersuaded.

In denying Geren's motion for a directed verdict, the trial court arrived at the legal conclusion that a hearing pursuant to § 10-151 is not the proper forum for the determination of whether a resignation was voluntary. We must therefore determine whether this conclusion was "legally and logically correct and whether [it] find[s] support in the facts set out in the memorandum of decision. . . ." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 181 Conn. 221.

"Section 10-151 protects a tenured teacher from termination of employment except for cause or elimination of the teaching position. *Cahill* v. *Board of Education,* 198 Conn. 229, 240, 502 A.2d 410 (1985). We recognize that not all separations from employment as a teacher are encompassed by the statute. Since, by its terms, the statute contemplates termination initiated by the board of education, a teacher's retirement or voluntary resignation would not trigger the act's protections." *Kolenberg* v. *Board of Education,*

---

[6] See footnote 1.

[7] In reaching its verdict, the jury answered fourteen interrogatories. In its answer, the jury specifically found that Geren's resignation was not coerced by the threat of criminal prosecution or public humiliation, and that he submitted his resignation voluntarily.

206 Conn. 113, 120, 536 A.2d 577, cert. denied, 487 U.S. 1236, 108 S. Ct. 2903, 101 L. Ed. 2d 935 (1988).

Among the protections afforded by the act is the right to a hearing before an impartial hearing officer or panel. The role of the hearing officer or panel is to make factual findings from which to determine whether adequate grounds existed for the teacher's discharge. *Tomlinson* v. *Board of Education,* 226 Conn. 704, 727, 629 A.2d 333 (1993). The hearing provides a tenured teacher due process upon contract termination. The initiation of a hearing presupposes the resolution of the question of the voluntariness of an employee's separation from employment; that is, it presupposes that the separation was employer initiated. Otherwise, the remedy afforded by the hearing, i.e., a determination of whether adequate grounds existed for a discharge, would be meaningless, as there would be no discharge to evaluate.

The determination of voluntariness, then, is logically prior to and, thus, outside the scope of a hearing pursuant to § 10-151. Geren's claim that such a hearing was the proper and exclusive forum for the determination of the voluntariness of his resignation is without merit. We conclude that the trial court properly denied Geren's motion for a directed verdict.

## VI

The final claim made by Geren is that the trial court improperly excluded from evidence relevant written board policies and employee rules. Geren asserts that he pleaded a breach of contract cause of action in count two of his complaint. He claims, therefore, that he was entitled to introduce the policies and rules in order to prove the terms of his contract and a breach thereof.

"Our rules of practice place the burden of proving error squarely on the appellant." *State* v. *Ong,* 30 Conn.

App. 45, 51, 618 A.2d 583, cert. denied, 225 Conn. 909, 621 A.2d 290 (1993). The appellant must also prove that any error established was harmful. *State* v. *Williams,* supra, 231 Conn. 250. In his brief, Geren asserts that the written board policies that he attempted to introduce are probative of a breach of contract by the defendants. His brief, however, "fails to comply with Practice Book § 4065, which requires the appellant to support the statement of facts with appropriate references to the record or transcript, and does not permit reliance on any fact that is not set forth in a statement of facts or appropriately incorporated into the brief." *State* v. *Ong,* supra, 51–52.

Geren's failure to set out the salient facts in the manner required by Practice Book § 4065 leaves us unaware of the policies he offered into evidence, the content of those policies, and their relevance to his claim. The absence of such evidence, adequately supported by reference to the transcript, prevents us from determining whether the trial court acted properly in excluding the evidence. It is not our role "to guess at possibilities, but to review claims based on a complete factual record developed by a trial court." (Internal quotation marks omitted.) *State* v. *Hoeplinger,* 27 Conn. App. 643, 647, 609 A.2d 1015, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992). Consequently, we deny review of this claim. See *Taylor* v. *American Thread Co.,* 200 Conn. 108, 509 A.2d 512 (1986); *State* v. *Ong,* supra, 30 Conn. App. 52.

The judgment is affirmed.

In this opinion the other judges concurred.